Whitehead J.
The whole of the plaintiff’s case is spread out in his declaration. He admits the delivery of a deed and possession of the premises, by the defendant. His complaint is, the destruction of the mill-dam by a freshet, on the 18th of March. *546 3837 ; and that in that state the possession of the premises was delivered to him, when, by the terms of the agreement, he was entitled to have the property delivered to him in as good repair as it was in at the date of the first agreement.
It is objected in the first place, that, because the injury to the dam occurred after the day limited for completing the first agreement, it does not constitute a breach of that agreement: and that it can be no breach of the second or subsequent agreement, because there is therein no covenant on me part of the defendant to deliver the possession in as good repair, &c.
Although the defendant did not by the second agreement in terms covenant to deliver the possession in as good repair, &c., yet by a fair construction of this last agreement, all the covenants of the first were continued in force for another year. The execution of it was only postponed. So far as regards this question, they are to be considered as one instrument. On the day last appointed for the completion of the sale and purchase, the defendant was bound to deliver possession of the premises according to the terms of his first contract.
Another objection taken by the defendant’s counsel is, that the defendant could not give possession of the premises, on the 1st of April, 1837, because he was not then in the sole possession, but in possession jointly with the plaintiff and by his consent. Under the provisions of the last agreement, the parties went into the joint possession of the premises, but the defendant was in as owner of the fee, and by the very terms of the agreement, the plaintiff was in as his tenant paying rent. There was nothing in this possession by the parties, to vary or affect their rights or liabilities. The possession of the plaintiff, as the partner of the defendant in the business of sawing, was as a tenant paying rent. The possession to which he was entitled, under the agreement, upon paying the consideration money as therein mentioned, was as purchaser of the fee. Upon performing the stipulations on his part, he was entitled to full and sole possession. There is nothing in the provisions of the second agreement, relating to the partnership of the parties, which could at all prevent the defendant from giving this possession; nor is there anything in these *547 provisions which countenances the idea that such possession was not to be delivered.
Again — it is said, that whatever the agreement of the parties was, it was completed by the payment of the purchase money and delivery of the deed and possession. That the plaintiff, by accepting the deed and possession, has discharged the defendant from all claim, for damages under the contract. This is not the rule of law. The plaintiff, by accepting the deed and possession, did not waive his right to damages for the dilapidated condition of the property, at the time possession was taken. He had a right to accept the deed and possession, reserving to himself his claim for damages under the agreement. Such was the opinion of this court in this case, reported in 3 Har. 246. The language of the court is, “ if the defendant has given a deed and delivered possession, but not in as good repair, &c., then the plaintiff should assign as a breach, that the defendant had not delivered possession of the premises in as good repair as the same were when the agreement was made, and show wherein the difference consists.”
The last objection made by the defendant’s counsel, is; that as it appears by the declaration, the injury to the dam arose from a freshet, it must be regarded as only natural wear and tear, and therefore comes within the exception in the article. We were referred to'Webster’s dictionary for the meaning of the terms used in the exception, particularly the words natural and tear ; and from these definitions the counsel argues that, by the use of these terms, the parties meant more than the ordinary decay of the property by reasonable use. It is insisted, that the exception provides, not only for the ordinary decay of the property, by the use of the term wear ; but also by the use of’the other terms, for the violent rending or destruction of the same by natural causes, as by freshets.
It should be borne in mind, that the agreement was to be executed by payment of the purchase money and delivery of the deed and possession of the premises, at a future day; and until then the defendant was to retain the possession. There is nothing in the agreement from which it can be inferred, that the sum the plaintiff agreed to pay was not a full and fair price for the property in the condition it was at the date of the contract. *548 It would be unreasonable to suppose, that the plaintiff would covenant to pay a full price for the property at a future day, and in the mean time run the hazard of its destruction by the elements, or of its being improperly used while in the possession of the defendant. But however this may be, the words used in the exception are to be interpreted in their popular and usual meaning, and as they are understood by plain'practical men; and in that sense, they do not justify the construction contended for by the defendant’s counsel. The intention of the parties was, that upon the plaintiff’s performing the stipulations on his part, pos-, session of the property was to be delivered to him, in as good condition as it was at the date of the contract, except as it might be depreciated in value by the ordinary use of it by the defendant. The word natural, in the connexion in which it is here used, means no more than ordinary, as contra-distinguished from unnatural or extraordinary; and the whole clause refers only to the decay or depreciation in value of the mill, by its ordinary and reasonable use by the defendant. The destruction of the dam by the freshet does not, in my opinion come within the exception.
Let the demurrer be over-ruled.
Randolph, J.
To the declaration filed in this case, there is a general demurrer and the first ground urged in support thereof is, that the breach assigned is not within the second agreement, and it is insisted that the covenant in the first agreement, to deliver possession of the premises in as good repair, &c., expired with that agreement, and was not extended by the second. I think this exception not well taken. By the second agreement, the time of payment and delivery is extended ; delivery of what, the deed, the premises, or both ? Doubtless the parties meant an entire extension of the contract and its terms; at least, in the absence of anything to the contrary, we are bound so to presume from the terms used, except so far as the second agreement changes the first; it was in fact nothing more or less than an agreement, that the time for the consummation of the sale of the premises, should read in the first agreement April 1st, 1837, instead of April 1st, 1836 — extension of the time of performance does not waive the stipulations of an agreement. 15 John. R. *549 200. Nor do I think that, because by the second agreement the plaintiff became a tenant of the defendant, and joint-possessor with him of the premises until April 1st, 1837, the plaintiff is thereby prevented from bringing his action.
The next ground urged by the defendant is, that the plaintiff, by accepting the deed and possession, on the 1st of April, 1837, extinguished or waived his right to damages under the contract. The plaintiff might here set up a material alteration in the property, as an excuse for his refusal to comply with the agreement, but he was not bound to do so. The covenant was intended for his safety and benefit, and not for the advantage of the other party; suppose, without further agreement, he had taken a deed without warranty, and was subsequently ousted by a better title, could he not have sued ou the agreement? A parol agreement may be merged in a subsequent written one on the same subject matter, yet one written .agreement does not necessarily destroy another, although respecting the same matter. I do not think this a sound objection.
The last ground insisted on is, that the destruction of the dam by the freshet comes within the exception of natural and reasonable wear and tear; and upon this point, no direct authority has been produced by the researches of either counsel. The covenant is said to be like that usually inserted in leases for the repair of buildings, under which it has been holden, that the lessee is bound to repair or rebuild, although the property be destroyed by fire or tempest, on the ground that the party had his option to enter into the general covenant or to insist on exceptions. 2 Saun. R. 422, n. 2. Platt on Covenants, 275. The same authorities also show, that the lessees would be liable for rent, although the property were destroyed by fire, under a general covenant to repair, except in case of loss by fire. But here it is insisted, there is no covenant to repair, and unless a covenant to deliver up possession of the premises, in the condition they were, amounts to a covenant to repair, there is force in the objection. In Phillips v. Stevens, 16 Mass. R. 238, the covenant was to keep in repair, and to yield up the premises, in as good-condition as they were, and the breach assigned was upon both branches of the covenant; the plea was destruction by accidental fire, which the court on demurrer overruled.
*550 Although I do not find any express adjudication upon the point, I cannot but consider a covenant to deliver up premises at a particular time, in as good repair as they were in at the date of the agreement, as amounting to a covenant to repair.
If the covenant in question had no qualification, there could be little doubt then but that the defendant would be liable to repair, or for any damages which might arise, from his delivering up the premises, not in as good repair as they were; but there is an exception, natural and reasonable wear and tear, and this must be construed according to the meaning of the parties, at the time. What was that ? Suppose the tempest had not only destroyed the dam but the mill too, and rendered the property valueless, would the party have been bound to pay his money, and take a deed for it? Or if he received a deed, would he have no remedy ? True all might have been caused by the wear and tear of nature, but not by the ordinary or reasonable operation of natural causes; and it would appear as if the word reasonable was inserted in this agreement to meet just such a case as the present, and to qualify the exception to such wear and tear, as might reasonably be supposed to arise from ordinary causes, and the action of the elements. In The Breeknock Canal v. Pritchard, 6 Term, Rep. 750, the covenant was to build a bridge over the river Usk, and to keep it in complete repair, for seven years; and the plea was, that the defendant had well built and kept in complete repair a bridge, capable of resisting any usual or ordinary flood, but that it was destroyed by the act of God by a great, unusual and extraordinary flood of water, such as a bridge, so built and kept in repair, could not reasonably be expected to resist, and without the default of the defendant. On demurrer the plea was held bad, because there was no exception or qualification in the covenant, and so Lord Kenyon says this sort of loss must have been in the contemplation of the parties ; and so in the present case, in the contemplation of the parties, any reasonable loss or diminution of value, arising from the ordinary operations of nature, must be at the risk of the purchaser, anything beyond that at the risk of the seller. The demurrer must therefore be overruled.
Demurrer overruled.
Hoknblower, C. J., concurred.