FREDERICK C. PEPER et al., Respondents, v. THE ST. LOUIS BRASS MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals, December 14, 1909.

1. LANDLORD AND TENANT: Lease: "Natural Wear and Tear" Defined: Liability of Lessor for Repairs. A lease by which the lessee not only agreed to exercise every precaution in the use of the leased machinery, but agreed to assume all cost of repairs and, at expiration of the term, turn over the machinery and equipment in perfect condition, "saving natural wear and tear," required the lessee to make whole damage to machinery resulting from accidents, like the fracture of an engine shaft, though not resulting from its negligence; "natural wear and tear" signifying wear resulting from friction and the gradual tearing apart of joints, rivets, and other portions in the operation of the machinery.

2. ———: ———: Injury to Demised Property: Damages. The amount the lessor is entitled to recover of the lessee for non-compliance with the provision of the lease to turn over machinery, at the end of the term, in "perfect condition" is not what it will cost to repair a broken engine shaft, where it cannot be repaired so as to be as good as before broken, but the cost of a new shaft.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*O. J. Mudd* for appellant.

(1) The judgment must fail for want of proof to support the material allegations of the petition. (2) Even if this were not true, the judgment must fail for want of proof of damages.

*Luther Ely Smith* for respondents.

(1) All the facts being before the court, the court will determine as a matter of law whether or not defendant was guilty of a breach of covenant. Knapp Co. v. Standley, 45 Mo. App. 264. (2) An engine whose crank pin is essential to the transmission of power to the machinery proper is not in perfect condition when said crank pin is broken throughout its diameter, and attempted repairs upon the same have proven insufficient, the rivet having become loose and it being impossible to operate the engine safely or successfully in that condition. And such imperfect condition is not within the exception "natural wear and tear." Warehouse Co. v. Carr, 5 C. P. D. 507; Lockrow v. Hogan, 58 N. Y. 625; Waddell v. De Jet, 75 Miss. 104; Green v. Kelly, 20 N. J. L. 544; McIntosh v. Lown, 49 Barb. 550; Armstrong v. Maybee, 17 Wash. 24; Jaques v. Gould, 4 Cush. 384; Thompson v. Cummings, 39 Mo. App. 537. (3) Defendant having been guilty of a breach of its covenant to surrender the machinery in perfect condition saving natural wear and tear, plaintiffs are entitled to the cost

of putting in a new shaft, and that, too, without any allowance for old or broken parts or diminution in value on account of wear and tear. 3 Sedgwick on Dam. (8 Ed.), 146 sec. 990; Burke v. Pierce, 55 U. S. App. 59, 83 Fed. 95, 27 C. C. A. 462; Scott v. Haverstraw Co., 135 N. Y. 141; Appleton v. Marx, 191 N. Y. 81; Franklin v. Triplett, 79 Ark. 82; Loughlin v. Carey, 21 Pa. Super. Ct. 477; Lehmaier v. Jones, 91 N. Y. S. 687; Joyner v. Weeks (1891), 2 Q. B. 33. (4) Defendant has admitted substantial damages, and has waived the right to question the sufficiency of the court's finding under the third count as to the amount of damages.

The petition for respondent contains three counts, but we are only concerned with the third, except in so far as it adopts the allegations contained in the other two. The action is one to recover damages for defendant's non-compliance with a term of a lease which required it to deliver the property back to plaintiffs, as lessors, at the end of the term, in perfect condition, "saving natural wear and tear." The original lessor was the Peper Tobacco Warehouse Company, and the leasehold consisted of certain lots and buildings on Market street in St. Louis. Those premises were let to defendant by the warehouse company for five years, beginning August 15, 1902, for a certain rent and upon certain covenants set out in the contract. The warehouse company agreed to and did furnish, erect and install for defendant an engine and other machinery and appliances in the building, consisting of heat, light and power plants and an electric elevator; the engine being described as: "One center crank simple engine, self-oiling type, 100 H. P., speed approximately 275 revolutions per minute." During the term, plaintiffs became the owners of the fee and defendant attorned to them as lessors. Those facts are averred in the first count of the petition and are adopted in the third, which next alleges defendant covenanted and agreed to turn

over to the lessors or their successors, at the expiration of the term, said engine, machinery and appliances, consisting of heat, light and power plants, and an electric elevator, in perfect condition, saving natural wear and tear; this covenant and stipulation had been breached as follows: At the expiration of the term defendant turned over to plaintiffs those properties, but not in a perfect condition; the engine which supplied the machinery with power was in an imperfect condition and damaged; the part of the engine known as the "shaft" was broken and the engine could not be run with the broken shaft; that when the premises were turned back, a rivet or pin had been forced through the portion of the engine shaft known as the "crank pin;" said crank pin was in perfect condition and unbroken when installed and then contained no rivet or pin but formed one solid piece with the remainder of the shaft; when the engine was turned over by defendant at the end of the term, the crank pin was loose and by reason of its condition could not be used nor could the shaft be used or the engine itself operated; that the imperfect condition of the crank pin and shaft and the damage done to the same were not natural wear and tear. It is further alleged the reasonable cost of putting said shaft and engine in perfect condition was $765. Plaintiffs alleged they had been damaged in said sum and prayed judgment for it. The answer was a general denial. The case was submitted to the court below for decision on stipulated facts, and in so far as those facts are not embraced in the statement already given, they will be shown by the following excerpt from the stipulation:

"III. At and before the beginning of the term, certain machinery was installed on the premises in accordance with certain specifications attached to and made a part of the lease. This machinery was used by defendant continuously from the beginning of the term until about January, 1907.

"IV.   About Thanksgiving (November —), 1905, the crank pin on the crank shaft of said engine and machinery broke.   The crank pin is more particularly described as follows:   The crank pin is that portion of the crank shaft on which the connecting rod turns, the connecting rod being that portion of the engine which connects the crank pin with the cross head, and at the cross head receives the power transmitted by the piston which runs from the cross head to the cylinder, and in that manner receives the power from the engine.   The power is thus transmitted from the cylinder to the operating parts of the machinery by means of the piston, cross head, connecting rod and crank pin.   Without the crank pin to convert the power of the engine into rotary motion, no power could be transmitted to the operating parts of the machinery.   The crank pin is an integral part of the crank shaft, forming one solid piece with same, being made from one single continuous piece of metal in the first instance.   The crank shaft is 8 feet, 9 3-4 inches long, 'and rests on three bearings.   The crank pin is 4 1-4 inches in diameter; the two portions of the crank, by which the crank pin is connected with and forms one continuous piece with the shaft, are each 13 1-2 inches long and 4 inches in width.   The crank pin is 4 inches long.   The crank pin broke through its entire diameter, 4 1-4 inches.   The shaft and the engine could not be used with the crank in that condition.

"V.   Defendant employed the St. Louis Iron and Machine Works to repair the shaft, and the same was repaired by said company, by boring a hole 2 7-8 inches in diameter through the crank pin, forcing a rivet through the hole and riveting this rivet into and through the crank pin.   The riveting was made flush with the sides of the crank shaft and was accomplished by countersinking the edge of the hole on each end 1-4 of an inch, and having a fillet extending over the edge of the rivet on each end of the same.   The fillet was then hammered flush with the sides of the crank shaft.

"VI.   The engine was thereafter run for about thirteen months, or until about January, 1907, when the rivet in the crank pin on the shaft became loose, and the engine could not be safely and successfully operated in that condition.   Defendant made no further repairs on the engine, but left it in that condition until the end of the term, and then surrendered it in that condition, the same shaft and crank pin, the same rivet, but still loose.   The lease is considered in evidence.

"VII.   The repairs by the St. Louis Iron and Machine Works in November, 1905, cost $200.   Defendant did not then, or at any time thereafter, notify plaintiffs or any of them, or their agents, of the breakage or repairs, or get their consent to repairs, and plaintiffs did not know of the damage or repairs until after the close of the term, and plaintiffs would not have consented to the repairs so made by the St. Louis Iron and Machine Works had they been informed of said breakage and had their consent to the said repairs been asked.

"VIII.   The lease contained the following covenants: 'All repairs and alterations deemed necessary to be made hereafter by said lessee after the completion of the repairs specified in said specifications, to be made at the expense of said lessee with the consent of said lessor and not otherwise, provided, however, that small repairs not costing in excess of one hundred dollars ($100), nor materially altering the building may be made without previous consent of said lessor.   Said lessee further agrees to exercise every possible precaution in the maintenance and use of machinery consisting of light, heat and power plants, and electric elevator, and agrees to assume all cost of repairs, and agrees to turn over to said lessor and its successors, at the expiration of this lease, the above-mentioned machinery and equipment in perfect condition, saving natural wear and tear.   It is further agreed by and between the parties hereto that all repairs necessary to roofs, skylights, gut-

tering and down spouts are to be done at the expense of said lessor.'

"IX. The crank shaft could be reriveted at a cost of about $200, but the shaft repaired in that manner will not be guaranteed to run straight or as good as before the breakage. A new shaft would cost $765, if supplied by the makers of the engine; $740 if supplied by a competitor. If a new shaft is supplied, the firm supplying same will guarantee that the shaft will run as good as before breakage.

"It is further stipulated and agreed that the cause may be submitted upon the above facts and put upon the law docket, but subject to the following conditions: if the court should find in favor of the plaintiffs under the first count of the petition, either party plaintiff or defendant, or both parties at their election, may submit evidence to the court as to the reasonable cost of making the repairs mentioned in said part second of the second count of said petition. Such evidence shall be heard and determined by the court, both parties waiving a jury. And the sole issue then remaining shall be the reasonable cost of making the repairs so specified in said petition. Should the court find in favor of the defendant on all counts of the petition, or in favor of the plaintiffs on the second count or third count of the petition, judgment shall then be rendered according to such finding of the court, either party, of course, reserving the right to move for a new trial or appeal, as in ordinary course."

The court entered a verdict and judgment in favor of plaintiffs in the sum of $740 on the third count of the petition. Defendant appealed.

GOODE, J. (after stating the facts).—These points are raised: First, no evidence was adduced to establish a breach of the covenant by defendant to turn

146 App.—13

over to the lessors, at the expiration of the term, the engine, machinery and appliances in perfect condition, save natural wear and tear; the gist of this contention being the broken condition of the crank pin was not shown to have resulted otherwise than from natural wear and tear. Second, no proof was made of the amount of damage sustained by plaintiffs, even if the covenant was breached by defendant. According to the fourth and sixth paragraphs of the stipulated facts, the broken and riveted crank pin rendered it impossible to operate the engine safely and successfully. This pin was originally an integral part of the main shaft of the engine and not fastened to it by a rivet, welding, or in any other way, and obviously needed to be sound for the engine to work well. As the machinery was turned back to plaintiffs with the shaft so badly out of order the engine could not be operated, it was not turned back in perfect condition; and the question is whether its imperfect condition was due to natural wear and tear, and hence defendant was exempt, under the clause of the lease quoted in the eighth paragraph of the stipu- lated facts, from the obligation to make it perfect before surrendering the premises. Or, to state the question in the phase in which counsel for defendant states it, we ask whether the court might infer, from the stipulated facts, the imperfect condition of the engine was not due to natural wear and tear, or might hold it was not as a matter of law. Nothing is said in the agreed facts about what caused the pin to break, or as to whether the break was due to negligence, strain in operating the engine, or some flaw in the metal.

1. Abstaining from an attempt to ascertain the meaning of the words "natural wear and tear" in a broad sense, we shall confine our inquiry to the mean- ing the parties understood them to have in the lease before us. The reasoning of the court below in regard to this inquiry strikes us as sound. In an opinion which accompanied the judgment, the court pointed out that

in the last clause of the quoted portion of the lease, the lessee not only agreed to exercise every precaution in the maintenance and use of the machinery, but agreed further to assume all cost of repairs and, at the expiration of the term, turn over the machinery and equipment to the lessors in perfect condition, "saving natural wear and tear." The learned judge said the obvious purpose of those stipulations was to insure the return of the property to the lessors in perfect condition, save as to faults due to natural wear and tear, inasmuch as every possible precaution in the use of the property was exacted of the lessee and also an agreement to assume the cost of repairs and return it in perfect condition. In view of those requirements, the court thought the conclusion was impossible that the parties contemplated the machinery could be turned back in perfect condition, save as affected by natural wear and tear, with the engine broken so the machinery would not run. We are persuaded this reasoning is sound and that the parties executed the lease understanding it required defendant to make whole such damage to the machinery as might result from accidents; like the fracture of the engine shaft. The stipulation regarding repairs and returning the property in a perfect condition cannot be held to mean that only repairs and restoration should be made of damage occasioned by defendant's negligence. This is true because there was an independent covenant requiring the most extreme care by defendant in using the machinery, and defendant was, of course, liable for a breach of it; and besides, he covenanted to make repairs and restore the property in perfect condition, saving natural wear and tear, which covenants also might be breached. Read together those provisions evidently contemplated it would be defendant's duty to make good injuries which might occur after every possible precaution had been exercised in using the machinery, unless the injuries occurred from natural wear and tear; and if

every fortuitous injury, like the breaking of the engine shaft, was meant to be taken as natural wear and tear, one hardly can conceive of an accident to the machinery which would not fall within the saving exception to defendant's obligation to repair. The requirement that defendant should return the machinery in perfect condition, saving natural wear and tear, might become nugatory by defendant's having the right to return it broken so it could not be operated. "Natural wear and tear," seems rather to signify wear resulting from friction and the gradual tearing apart of joints, rivets and other portions in the operation of the machinery. The meaning of the words has been passed on in judgments of courts in the following cases, which we think unnecessary to abridge or do more than cite for the examination of the reader. [Jaques v. Gould, 4 Cush. 384; Manchester, etc., Co. v. Carr, 5 C. P. D. 507; Thompson v. Cummings, 39 Mo. App. 537; Green v. Kelly, 20 N. J. L. 544; Waddell v. Dejet, 76 Wis. 104; McIntish v. Lown, 49 Barb. 550; Lockrow v. Hogan, 58 N. Y. 635.]

2. Defendant says there was no proof of what damages plaintiffs sustained from the breach of the lease, if it was broken, and hence the court was not justified in giving judgment for more than nominal damages. The parties agreed the shaft could be riveted for two hundred dollars, but would not be as good as before it broke; hence plaintiffs were not bound to repair it in that manner in order to keep the damages down; for they were entitled to have the machinery restored so it would be in "perfect condition." It was agreed a new shaft would cost $765 if supplied by the maker of the engine, and $740 if supplied by a competitor. The court accorded to defendant the benefit of competition and as nothing but a new shaft would make the engine perfect, and this could not be obtained for less than the amount for which the court gave judgment, we cannot see where defendant has room for complaint. We think the conclusion is inevitable that

plaintiffs were damaged at least to the amount of the lowest sum for which they could renew the shaft, as that was the only way to render the engine perfect or enable it to be operated safely and successfully. [Burke v. Pierce, 83 Fed. 95; Joyner v. Weeks (1891), 2 Q. B. 33.] That only a verdict for nominal damages was permissible is an untenable position, inasmuch as defendant agreed it would take as much as two hundred dollars even to rerivet the shaft.

The judgment is affirmed. All concur.