JOHN J. VERTREES, JR. v. TENNESSEE AUTO CORPORATION.

Middle Section.    April 16, 1927.

Petition for Certiorari denied by Supreme Court, July 15, 1927.

1. **Landlord and tenant.  Burden of showing damaged condition of premises was not due to tenant's negligence rests on the tenant.**
    In an action to recover for damages to plaintiff's property alleged to have been caused by the tenant's negligence, held that the burden was on the defendant to show that the condition of the premises was the result of usual wear and tear or unavoidable injury.

2. **Evidence.  Pleading.  A plea of performance admits all matters that are well alleged and assumes the burden of proving performance.**
    In an action by a landlord to recover from his tenants for damages to the premises where the plea was one of performance held that the burden of proving it was on the defendant.

3. **Negligence.   Definition.**
    Negligence is a failure to exercise the degree of care demanded by the circumstances.

4. **Landlord and tenant. Evidence. Evidence held to show damages to property due to tenant's negligence.**
    Evidence in the instant case held to show that the defendant was guilty of negligence in caring for the landlord's property and was liable for damages thereto.

5. **Damages. The measure of damages in tort actions differs from that in actions on covenants.**
    The fundamental rule for the measurement of damages in tort actions is actual compensation for the injury suffered, but covenants of a lessee, such as those upon which the present suit is based, may require more of him.

6. **Damages. Measure of damages for breach of covenant to keep premises in repair stated.**
    The general rule established appears to be that the landlord is entitled to a sum sufficient to make the repairs stipulated for, and that where this can only be done by the use of new materials no deduction is allowed the tenant on that account. If he is thus required to pay more than seems equitable, it results from the terms of his covenant, and he cannot therefore complain. If he had complied with these terms, he must have supplied the new materials at his own cost, and having failed to do this, the landlord must be allowed the cost of doing what he should have done.

Appeal from Part II, Chancery Court of Davidson County; Hon. James B. Newman, Chancellor.

Affirmed.

Cornelius & Swiggart, of Nashville, for appellant.

John J. Vertrees and W. O. Vertrees, of Nashville, for appellee.

FAW, P. J.   The Chancellor filed a written finding of facts and opinion which contains a sufficient statement of the issues in the case.   The appellant's assignments of error challenge certain of the Chancellor's findings of fact and his conclusions of law upon the facts thus found, but his statement of the issues is not criticized.

The Chancellor's opinion, which contains his statement of the issues and his finding of "the material, determinative and controlling facts," is as follows:

"This is a suit by the complainant to recover of the defendant $1542 damages for breach of a lease contract. It is alleged that the damages suffered were caused by the failure of the defendant to take good care of the larger boiler on the premises and deliver same to the owner in as good condition as when received, and by its reckless, negligent and improper use and treatment thereof during the term of the lease contract.

"The material, determinative and controlling facts follow:

"On January 1, 1919, complainant leased to the defendant certain business buildings situated on Broadway and Grundy street, Nashville, Tennessee, for a term of three years, commencing January 1, 1919, and ending December 31, 1921, with an option to extend the lease for another term of three years, which option was exercised in accordance with the lease, and the lease extended to Decem-

ber 31, 1924. Prior to the execution of this lease, the Tennessee Auto Company, another business concern, had occupied this property from 1908 until 1918.

"The material provisions of said lease—the basis of this lawsuit, are as follows:

" 'It is further agreed the said Tennessee Auto Corporation, as lessee, agrees and binds itself to take good care of the property, not to injure or deface in any way the improvements contained in this lease or permit anyone else to do so, but deliver the same to the agents or owner in as good condition as when received or may be at completion of repairs agreed on in this contract, except, however, the usual wear and tear or unavoidable damage by fire, storm or other casualty not due to the fault or negligence of said lessees.'

"It is further stipulated in said lease that the lessee cannot 'make any change or alteration in said buildings without the consent of the lessor in writing.'

"The large boiler was comparatively new, having been purchased and installed in 1913 by Kennedy & Co., when the lessee went into possession in 1919. This type of boiler, with ordinary and proper care, would have lasted twenty-five years. It had been in use only about five years when the lessee took possession of the premises. giving sufficient and satisfactory service. When the lease terminated December 31, 1924, this boiler had cracks in it, and was in such condition that it could not be used at all, the condition of the boiler being such that it would cost more to repair it than to purchase and install a new boiler of the same type.

"After the defendant took possession under the lease contract, it took out insurance with the Maryland Casualty Co. in 1919, against explosion and cracking of the boiler and this boiler was inspected during the heating season of 1919 by Mr. Emerson, and twice a year thereafter until the policy was cancelled in 1922. These inspections would occur, one during the heating season and one during the summer months. The last inspection made by Mr. Emerson was in 1922, and at this time he discovered a leak indicating that the boiler was cracked. Mr. Emerson's duties were to inspect the boilers insured by his company and to ascertain whether they were cracked or not. He carefully examined this boiler in his inspections, and discovered no cracks until 1922.

"When the option to extend the lease was exercised by the lessee and after the boiler had been used by it for a period of three years, no complaint was made to the lessor of any cracks or leaks in it. The first information that came to the notice of the lessor, Mr. Vertrees, of the defective condition of the boiler, was in the summer of 1923, and the first demand made upon him to repair same was in the summer of 1924, before the expiration of the

lease December 31, 1924. When the lessee took possession of the premises, the boiler was giving good service and when it surrendered possession at least three different sections of it were cracked, and it was useless for the purpose for which it was employed.

"The difference in the condition of the boiler when the lease began and when it terminated did not result from usual wear and tear, etc., but from the failure of the lessee to take good care of it, and its negligent, improper and careless use of same.

"When the lessee took possession of the buildings in 1919, they were in good repair as to windows, doors and glass. When these buildings were returned, there were some broken window glass and doors, and some of the window sash had been entirely removed. The broken window glass and the removal of the window sash did not result from usual wear and tear, or unavoidable damage by fire, storm or other casualty, not due to the fault of the lessee, but from the failure of the lessee to take good care of this property and its negligent and improper use thereof; nor were the window sash removed with the written consent of the lessor. The injuries to the doors to these buildings were the result of usual wear and tear except the breaking of the glass therein, and in the transom, such as might naturally be expected to result from their use in the business conducted by the lessee. The evidence as to the cost of replacing these items is meager and unsatisfactory.

"The burden is on the complainant to show the condition of the boiler, window glass and frames January 1, 1919, and to show their condition December 31, 1924, when they were returned, and if the condition in the latter period was different from that in the first, the burden then shifts to the defendant to show that it was the result of usual wear and tear, or unavoidable damage by fire, storm or other casualty, not due to its fault or negligence. The terms 'ordinary wear and tear' and 'usual wear and tear' have the same legal significance, and do not include injuries to property through the negligent care and use of same by the tenant.

"The court is of opinion that the defendant has breached the lease contract entered into in this case, by failing to take good care of the leased property and return same to lessor in as good condition as received, usual wear and tear excepted, and is liable to respond to complainant in damages for such failure. The amount of damages suffered not sufficiently appearing from the proof, the cause will be referred to the Clerk and Master to ascertain and report same from the proof on file and such proof as may be taken and filed.

"Decree accordingly,
"Newman, Chancellor."

The substance of the foregoing findings and opinion of the Chancellor were embodied in a decree duly entered of record, and by which the cause was referred to the Clerk and Master to report, from the evidence then on file and such additional evidence as might be taken and filed by the parties, the amount of the damages suffered by the complainant by reason of the defendant's breach of the aforesaid lease contract.

The parties, through their solicitors, entered into a written stipulation which was filed in lieu of additional proof, and which is as follows:

"In this cause it is stipulated and agreed:

"1.    That the cost of installing a new boiler in the complainant's garage in the place and stead of the boiler known as the large boiler, in the pleadings mentioned, would be nine hundred and ninety dollars ($990) and would have been the cost and expense at the date of the expiration of the lease exhibited with the bill; and

"2.    That it would cost more than that amount to have repaired the boiler and to put it in due condition; and

"3.    That the cost of repairing the windows, sash, and window glass in the said buildings would be, and would have been January 1, 1925, sixty ($60) dollars; and

"4.    That this stipulation shall be filed and used as evidence in the case to be considered along with the other evidence already on file, by the master in making his report pursuant to the order of reference in this case.

"This February 12, 1926."

Thereupon the Clerk and Master reported as follows:

"To the Chancellor:—

"Pursuant to an order of reference pronounced in this cause on February 3, 1926, of record in Minute Book 17, page 58, directing the Clerk and Master, from the evidence on file and such additional evidence as should be taken and filed, to report on the items hereinafter set out, a stipulation of counsel has been filed together with the entire record in this cause. From aforesaid stipulation and record, I find and report as follows:

## I.

" 'The amount of damages suffered by complainant by reason of defendant's breach of said contract:'

"As to this item, I report that the damages suffered by the complainant because of the injury to the windows, sash, and window glass in the buildings leased amount to the sum of sixty ($60) dollars which would have been the cost of repairing the aforesaid on January 1, 1925, the time when the lease on the premises expired.

"I further find that it would cost more to repair the large boiler, now in the building, and to put the same in good condition, than

it would to install a new one in its place and stead, and, as the cost of installing a new one would amount to nine hundred and ninety dollars ($990) which would have been the cost thereof at the date of the expiration of the aforesaid lease, I find that the damages suffered by the complainant because of the injury to the aforesaid large boiler amounts to the sum of nine hundred and ninety dollars ($990).

"Therefore, the total amount of damages sustained by the complainant by reason of the defendant's breach of the aforesaid contract amounts to the sum of one thousand and fifty dollars ($1050).

"See Exhibit 'A' to O. B.; Stipulation of counsel filed herein on February 20, 1926."

To the foregoing report of the master, the defendant filed exceptions which contain certain concessions, as follows:

"1st. The Clerk and Master has reported that the value of the damaged window glass and window sash in the leased buildings is sixty ($60) dollars, which valuation the defendant does not further contest.

"2nd. The Clerk and Master has reported that it would cost more (less) to install a new boiler in the leased buildings than it would cost to repair the boiler described in the bill and in the interlocutory decree of this court; and the Clerk and Master has reported that the cost of installing such new boiler would amount to nine hundred and ninety ($990) dollars. These findings of fact the defendant does not further contest."

But, through its third exception, defendant asserted that the master's finding that "the damages suffered by the complainant because of the injury to the aforesaid large boiler amounts to the sum of $990" was erroneous, and that this finding was not a finding of fact but was merely the application of the master's conception of the proper measure of damages to the facts found.

Defendant's fourth (and last) exception was in these words:

"4th. The Clerk and Master further reports the total amount of damages sustained by complainant by reason of defendant's breach of the contract described in the bill amounts to one thousand and fifty ($1,050) dollars.

"This finding of the Clerk and Master purports to be a conclusion reached from the findings of fact above set out and excepted to; and for the reason stated hereinabove defendant excepts to said final conclusion and finding of the Clerk and Master."

The Chancellor overruled the aforesaid exceptions of the defendant, confirmed the report of the master, and decreed that the complainant recover of the defendant the principal sum of $1050, and the further sum of $60 interest thereon from the date of the filing of

the bill (March 19, 1925), making in all the sum of $1110, and also the costs of the cause, for all of which execution was awarded.

The defendant prayed an appeal, which was granted by the Chancellor and perfected by the defendant, and the case has been heard on the record, assignments of error and brief filed by the defendant-appellant, reply brief on behalf of the complainant-appellee, and oral argument of counsel at the bar.

The first assignment of error is in these words:

"The Chancellor erred in holding that the burden of proof was only on the complainant to show a difference between the condition of the leased premises at the beginning of the lease period and at the termination thereof, and that the burden of proof shifted to the defendant to show that such difference in condition of the premises was the result of usual wear and tear or unavoidable damage by fire, storm, or other casualty not due to the defendant's fault or negligence. The Chancellor should have held that the burden of proof was on the complainant to show that whatever damage was done to the premises was the result of fault or negligence on the part of defendant and was not the result of usual wear and tear, or unavoidable damage by fire, storm, or other casualty not due to defendant's fault or negligence."

We do not think the Chancellor's ruling, of which the defendant complains through its first assignment, supra, was erroneous.

This is an action for a breach of certain covenants of the lease, and the pertinent covenants are as follows: The "lessee agrees and binds itself to take good care of the property, not to injure or deface in any way the improvements contained in this lease, or permit anyone else to do so, but deliver the same to the agents or owner in as good condition as when received, . . . except, however, the usual wear and tear or unavoidable damages by fire, storm or other casualty not due to the fault or negligence of said lessee."

In the text of 18 A. and E. Ency. of Law, 2nd Ed., at page 253, it is said: "Because of the extraordinary liability which the tenant incurred by reason of his general covenant to repair, it became common at an early date to except from his covenant injuries arising from certain causes, and at the present time the most common forms of exceptions have been judicially construed. Where the tenant claims that the injuries to the premises are within the exceptions to his covenant to repair, the burden is upon him to prove such fact," citing Peck v. Scoville Mfg. Co., 43 Ill. App. 360.

The case of Rustad v. Lampert (Minn.), 183 N. W. 843, was an action by the lessor against the lessee, upon the lessee's covenants in a written lease of a house in which there was a steam heating plant. During the occupancy of the premises by the lessee the boiler in the heating plant cracked and was damaged to the extent of $300, and the premises were surrendered to the lessor in this damaged con-

dition. The lessor sued to recover the amount of the aforesaid damages to the boiler. The Supreme Court of Minnesota affirmed a judgment for plaintiff, saying, among other things, "plaintiff made out a prima facie case when she proved that the premises were surrendered in damaged condition. It was then incumbent on defendant, if he would avoid liability, to prove that the damage was due to the excepted cause."

In the present case it is argued for defendant that the covenant could not have been correctly pleaded without an averment in the bill that the injuries claimed to complainant's property were not the result of any of the excepted causes of the lease contract, and that, since this was an essential averment of the bill, its denial in the answer casts upon the complainant the burden of proving the averment. In this connection, it is said that the rule of pleading thus invoked by defendant is based upon the same fundamental principle which, in criminal cases, requires that an indictment charging a violation of a criminal statute which contains exceptions must negative the exceptions whenever the exceptions are stated in the same clause or sentence of the statute in which the offense is defined, so that the offense cannot be well stated without negativing the exceptions, and the case of Villines v. State, 96 Tenn. 141, 33 S. W. 922, is cited in support of the proposition thus advanced.

But the rule announced in the Villines case, supra, does not apply where proof of the exception is peculiarly within the power of the accused, and in such case the burden of such defensive matter is not thrown upon the State. Lambeth v. State, 3 Shan. Cas. 754, 758-759.

The defendant, as lessee, was in the exclusive possession and control of the premises during the term of the lease, and was, therefore, in a better position than the lessor to know and to prove the cause or causes of the injuries to the property.

It is, in substance, averred in the bill, that the leased premises were in good order and condition when the lease was made, and in bad order and condition when the premises were surrendered to the complainant at the end of the term, and that the bad condition of the premises when surrendered to complainant was not due to any accident of fire or storm or other "casualty," nor to usual or ordinary wear and tear, but was due (1) to the failure of the defendant to take good care of the premises, and (2) to the defendant's negligent, careless and improper use thereof.

It is seen that there were averments that defendant had breached its covenants to take good care of the property and to deliver same to the owner (at the end of the term) in as good condition as when received (with the exceptions specified).

In its answer, the defendant (after admitting the execution of the lease contract and its occupation of the premises thereunder) said:

"Defendant denies that at the time it surrendered the possession of said leased premises at the expiration of its extended lease, on December 31, 1924, the said premises were not in the condition provided for and required by the lease; and defendant shows and avers that when said premises were so surrendered by it to complainant, said premises and every part and parcel thereof, were in as good condition as when received, with the exception of the usual wear and tear or unavoidable damages by fire, storm or other casualties not due to the fault or negligence of the defendant.

"Defendant avers that during the time said premises were under its control and possession, it took good care thereof and did not in any way injure or deface the improvements contained thereon."

This was equivalent to a plea of performance, and, in an action of covenant, "upon issue joined on the plea of performance, the defendant assumes the burden of proof." Jones v. Johnson, 10 Humph., 183, 185; Drouin v. Wilson, 80 Vt., 335, 13 A. & E. Anno. Cas., 93, 95.

Drouin v. Wilson, supra, is cited in support of defendant's contention that the burden was on complainant to show that whatever damage was done to the premises was the result of fault or negligence on the part of defendant and was not the result of usual wear and tear, or unavoidable damage by fire, storm, or other casualty not due to defendant's fault or negligence. Drouin v. Wilson was an action at law brought by the lessor upon the lessee's covenants in a lease which required the lessee to surrender the premises in as good condition as they were in when received, "ordinary wear and damage by fire or providential causes alone excepted." The particular breach of covenant assigned was the failure of defendant to replace a broken plate glass window. On the trial before a jury the defendant contended that there was a defect in the original construction of the window frame which, in the proper and ordinary use of the building, subjected the glass to a strain that caused it to break. The trial court charged the jury that the burden of proof was on the plaintiff, and the plaintiff excepted to this, saying that after he had shown the terms of the lease and the injury, the burden was on the defendant to show that the injury resulted from one of the excepted causes. In response to this exception the Minnesota Supreme Court said:

"The exceptions say that the defendant pleaded full performance of his covenant, and the plea regarding the broken window has been treated in argument as a plea of performance. If this is the nature of the plea, the burden of proving it was on the defendant. A plea of performance admits all matters that are well alleged, and assumes the burden of proving performance. 1 Chit. Pl., 487, 487a, and notes; 5 Ency. of Pl. and Pr., 378; Taylor L. & T., 684; Scott v. Hull, 8 Conn., 296; Barnett v. Crutcher, 3 Bibb (Ky.), 202; Harrison v.

Park, 1 J. J. Marsh. (Ky.), 170; Marston v. Hobbs, 2 Mass., 433, 3 Am. Dec., 61; Jones v. Johnson, 10 Humph. (Tenn.), 184.

"But the pleas are before us, and we think the plea in question is a plea that the defendant has not broken his covenant—non infregit conventionem. It admits the fact set up as a breach, i. e., the leaving of a broken window unrepaired, but says that that did not constitute a breach because within one of the excepted clauses.

"The plea non infregit conventionem is not a proper plea, because it pleads a negative to a negative, and two negatives do not make a good issue. But although an informal plea, it is not an immaterial one, and so is sufficient to sustain a verdict. It is held bad on demurrer, but good on motion in arrest. Walsingham v. Comb, 1 Lev. (Eng.), 183; 1 Sid., 289; 2 Keb., 51; Pitt v. Russel, 3 Lev. (Eng.), 19; Boone v. Eyre, 2 W. Bl. (Eng.)  1312; Hodgson v. East India Co., 8 T. R. (Eng.) 278; Taylor v. Needham, 2 Taunt. (Eng.) 279; Bender v. Fromberger, 4 Dall. (U. S.) 436, 1 U. S. (L. Ed.), 98; Roosevelt v. Fulton, 7 Cow. (N. Y.) 71.

"The question is, upon whom does the burden rest under this plea? The plea is in effect a traverse of the allegation that the breaking was not due to any of the excepted causes, and alleges the facts relied upon to bring it within one of those causes. The allegation of the declaration thus traversed was an essential one, for without it the covenant would not have been correctly stated. The plea being in substance a traverse, the burden of proving the issue was on the plaintiff, and the charge in this respect was correct."

We shall not undertake to determine whether, under the technical rules of common law pleading when applied to the peculiar facts of the case of Drouin v. Wilson, the Minnesota court did or not reach a correct conclusion; but we do not consider that opinion an authority in the case at bar. It is sufficient to say that, in our opinion, the rule stated in the Encyclopedia of Law, supra, and applied in Rustad v. Lampert, supra, is applicable and controlling in the instant case, and the defendant's first assignment of error is overruled.

Primarily, the defendant's second, third, fourth and fifth assignments of error, as we interpret them, challenge the material findings of fact made by the Chancellor as set forth in his written findings hereinbefore copied. We have reached the conclusion that the evidence supports the Chancellor's findings of fact, and we concur therein.

The evidence satisfies us that the leased premises were not returned to the lessor-complainant in as good condition as when received by the lessee, but were returned in a damaged condition, and that such injuries and damages resulted from a failure of the lessee-defendant to take good care of the leased premises, and to not injure or deface in any way the improvements thereon, or permit anyone

else to do so. We think this may, not inaccurately, be characterized (in the language of the Chancellor) as the "negligent and improper use" of the leased property by the lessee. "Negligence" is frequently defined as a want of due care, or "a failure to exercise the degree of care demanded by the circumstances." 20 R. C. L., p. 5, sec. 7. The covenants of the lease prescribed a degree of care which the lessee bound itself to exercise throughout the term of the lease, and a failure to exercise such degree of care was, in the circumstances, negligence. The Chancellor was not dealing with an action sounding in tort, but with a suit to recover for an alleged breach of covenant, and the references in his findings and opinion to "negligence" of the defendant-lessee should be interpreted in the sense appropriate to the character of action he had under consideration. The second, third, fourth and fifth assignments of error are overruled.

The defendant's sixth assignment is as follows:

"The Chancellor erred in overruling the exceptions filed by the defendant to the report of the Clerk and Master, and in holding thereby that the complainant was entitled to recover of the defendant the cost and value of the purchase and installation of an entirely new boiler to replace the one described in the bill, which at the time the defendant was obligated to return it to the complainant, was worth only one-half as much as a new boiler, having been used for one-half of the useable life of such boiler. Upon the facts found by the Chancellor and by the Clerk and Master, the Chancellor should have reduced the recovery on this item to half of the cost of the purchase and installation of a new boiler."

It will be recalled that the master reported that it would cost less to install a new boiler in the leased buildings than it would cost to repair the boiler as it was returned to the lessor, and the record shows that "the defendant does not further contest" this finding of fact.

The master further reported that "the damages suffered by complainant because of the injury to the aforesaid large boiler amounts to the sum of $990," and in this finding the Chancellor concurred. The defendant excepted to this latter finding of the master, and insists here (as he did below) that this finding was not a finding of fact but was merely the application of the master's conception of the proper measure of damages to the facts found.

The contention of the defendant, advanced through its sixth assignment of error, supra, is elaborated by the defendant's counsel on the brief as follows:

"It seems to the defendant that to be so clear as to require no argument that the Chancellor was in error in requiring the defendant to pay the complainant the price of the purchase and installation of an entirely new boiler, even on the theory that the cracks in the

boiler in the premises were caused by negligence of the defendant.

"It is conceded on the record that the boiler in question was installed about 1913 and that its ordinary useable life was only twenty-five years.

"At the expiration of the lease period, the time when the defendant was obligated to return the boiler in as good condition as when received, excepting the result of ordinary wear and tear, the boiler had been used for one-half the period of its useable life. It therefore was not worth more than one-half the cost of a new boiler.

"If the defendant had installed a second-hand boiler to replace the one which was cracked, and the boiler so installed was one which had a useable life of twelve and one-half years, there could be no question but that the defendant would have complied with the strict letter of its lease covenant.

"The bill avers a practical destruction of the boiler. It does not aver that the complainant had in fact been compelled to install a new boiler and had expended the cost of such installation, nor does it aver that a second-hand boiler as good as the one the defendant was obligated to return, could not be purchased and installed by complainant; nor is there any evidence to indicate that a boiler as good as the one which the defendant was obligated to return could not be purchased and installed for one-half the purchase price and cost of installation of a new boiler.

"If the complainant purchases and installs a new boiler, he will have paid for a boiler which would last twice as long as the boiler the defendant was obligated to return, under complainant's theory of the case. The case has been brought in a court of equity, and defendant submits that it would be grossly inequitable and unjust to require the defendant to pay the cost of the purchase and installation of a boiler of twice the value of the one which it was obligated to return to the complainant with the leased premises."

If this were an action to recover damages resulting from a tort of the defendant, the theory of defendant's counsel with respect to the proper measure of damages, as set forth in the foregoing excerpt from their brief, would, we are inclined to believe, be sound; but this is a suit to recover the damages suffered by a breach of the defendant's covenant to deliver the leased property to the owner at the end of the lease period in as good condition as when received by the lessee, and in such case the measure of the defendant's liability is not always the same as that of a tortfeasor. The fundamental rule for the measurement of damages in tort actions is actual compensation for the injury suffered, but covenants of a lessee, such as those upon which the present suit is based, may require more of him. This question was before the United States Circuit Court of Appeals for the

Third Circuit, in the case of Burke v. Pierce, 83 Fed., 95, 27 C. C. A., 462, 464, and the court there said:

"The measure of damages for breach of similar covenants has been much discussed by text writers, and frequently considered by the courts. The general rule established appears to be that the landlord is entitled to a sum sufficient to make the repairs stipulated for, and that where this can only be done by the use of new materials no deduction is allowed the tenant on that account. If he is thus required to pay more than seems equitable, it results from the terms of his covenant, and he cannot therefore complain. If he had complied with these terms, he must have supplied the new materials at his own cost, and having failed to do this the landlord must be allowed the cost of doing what he should have done. 3 Sedg. Dam. (8th. Ed.) 990; Watriss v. Bank, 130 Mass., 343; Cooke v. England, 27 Md., 14."

The rule is stated in substantially the same words in the text of the 4th Edition of Sutherland on Damages (Vol. 3, sec. 858), and among the illustrative cases there cited is Peper v. Brass Mfg. Co., 146 Mo. App., 187, 196, where the court gave judgment for $740 as the cost of a new crank shaft to an engine, although the shaft could have been riveted and repaired at a cost of $200, but when thus repaired it would not be guaranteed to run straight or as good as before the breakage.

In Tiffany's Landlord and Tenant, Vol. 1, sec. 118, p. 783, it is said:

"The measure of damages for breach of a covenant by the lessee to leave in repair or in the same condition as at the time of the demise is, at least as a general rule, the reasonable cost of putting the premises in the required condition. It is immaterial in this regard that owing to a contract made with a third person as to the subsequent disposition of the premises, or for some other reason, the actual value of the property to the landlord is not diminished by the lack of repair. It has been decided that the tenant is not, in ascertaining the damages, to be allowed for the increased value of the premises by reason of the substitution of old for new materials."

Numerous adjudged cases bearing upon the measure of damages recoverable by the landlord for the tenant's breach of the covenant to repair, or to leave the premises in repair etc., may be found in Notes, 14 A. and E. Anno. Cas., 152-153, and 64 L. R. A. 665-667.

The subject is discussed at length and the authorities reviewed in the case of Appleton v. Marx, 191 N. Y. 81, 83 N. E. 563, 16 L. R. A. (N. S.), 210, where the same rule is announced.

A case note supplemental to that in 64 L. R. A., 665, supra, is appended to the case of Appleton v. Marx, supra.

An examination of the authorities cited has convinced us that the master and Chancellor measured the amount of complainant's

recovery by correct standards and that it rests upon a sound legal basis. The sixth assignment of error is overruled.

The seventh (and last) assignment is a "blanket" assignment, complaining generally of the whole decree, without specification of error other than that "the preponderance of the evidence is against the finding of the Chancellor." We have held otherwise in response to previous assignments, and the seventh assignment is overruled.

It results that the decree of the Chancellor is affirmed and a decree will be entered here in favor of the complainant John J. Vertrees, Jr., and against the defendant Tennessee Auto Corporation for the principal sum of $1050, with interest thereon from the date of the filing of the bill (March 19, 1925), and for all the costs of the cause, including the cost of the appeal.

Crownover and DeWitt, JJ., concur.