**CYCLOPS CORPORATION, Plaintiff,**

v.

**The HOME INSURANCE COMPANY, Defendant,**

v.

**FISCHBACH & MOORE, INC., and Allis-Chalmers Manufacturing Company, Third-Party Defendants.**

**Civ. A. No. 70–1053.**

United States District Court, W. D. Pennsylvania.

Jan. 10, 1973.

Joseph A. Katarincic, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff.

Thomas Lewis Jones, Pittsburgh, Pa., Earl L. Hamilton, Columbus, Ohio, for defendant.

Thorp, Reed & Armstrong, Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for third-party defendants.

## OPINION

WEBER, District Judge.

This is a suit under a boiler and machinery policy including business interruption provisions. There is no dispute as to essential facts, the policy was in force at the time of the incident giving rise to the claim, and the parties have agreed as to the loss sustained. The sole dispute between the parties is whether the circumstances surrounding the incident are sufficient to meet the requirement of an accident as that term is defined in the policy.

The plaintiff has moved for summary judgment.

The insuring clause in effect on January 20, 1969, the time of the incident reads:

"To pay the insured the amount of Actual Loss Sustained which results from a total or partial prevention of Business . . . provided the prevention of Business is caused solely by an Accident, which occurs while this endorsement is in effect, to an object designated and described in any Schedule specified . . . .".

The electric motor in question in this case is a machine covered by the policy. It is agreed that a business interruption loss was suffered.

The dispute then centers around the application of the policy definition of "accident" to the incident in question.

The policy definition of accident is contained in Endorsement No. 7 of the insurance policy, in effect at the time of the incident, as follows:

"Condition 1—Definition of Accident: As respects any object designated and described in the Schedules, 'accident'

shall mean the sudden and accidental damage to an object or part thereof which necessitates repair or replacement to the object or part thereof, but 'accident' shall not mean:

A. Depletion, deterioration, corrosion or erosion of material;

B. Wear and tear; . . ."

It is significant to note that this was not the original definition of "accident" under the policy. The original definition read:

"Condition 1—Definition of Accident: As respects any Object designated and described in the Schedules 'accident' shall mean, unless otherwise stated in a Schedule or Endorsement, a sudden and accidental breakdown of the Object, or a part thereof, which manifests itself at the time of its occurrence by physical damage to the Object that necessitates repair or replacement to the Object or part thereof . . ."

■■■ This definition was deleted by Endorsement No. 7 which was procured by the insured on the payment of an additional premium. However, it is significant in the interpretation of the Endorsement in effect to consider the change of language from the prior endorsement. This is what the parties bargained for. Because of this the usual presumption of construing the terms of an insurance policy most strongly against the insurer will not apply. But because a prior endorsement contained requirements that were excluded, we are better informed as to what was intended by the new endorsement. The prior endorsement required a "breakdown" while the effective endorsement required only "damage". Secondly, the prior definition required that the breakdown "manifest itself at the time of its occurrence by physical damage to the object". The effective endorsement posed no similar requirement. Both definitions require repair.

The parties have filed extensive evidentiary material in support of and in opposition to the motion for summary judgment. Reviewing them reveals that there is general agreement as to the general operative facts of this occurrence.

The machine involved in this claim was a 8,500 h.p. electric motor, manufactured by Allis-Chalmers Manufacturing Company, and installed new in 1967 by Fischbach and Moore, Inc. in the Mansfield, Ohio, plant of plaintiff corporation. It forms part of the steel-making facilities of plaintiff corporation. The normal operating life of this motor would have been approximately 20 years.

The motor performed satisfactorily from the time of installation until January 20, 1969. It was rendered periodic maintenance by an independent maintenance contractor whose last periodic maintenance was performed on January 3, 1969.

The policy covering this motor was issued effective January 15, 1968, for a term of three years. The policy was issued after an inspection of the equipment by defendant which revealed that the equipment was in an insurable condition.

On its start-up on January 20, 1969, the motor went into severe vibrations which necessitated a shut-down for fear that it would destroy itself, and dismantling to determine the cause of the vibration.

The contract maintenance company inspected the machine at the plant site and found that the key on the shaft (axle) to which the spider (wheel) was affixed so that the two would rotate together was loose and therefore the connection between shaft and spider was loose.

Allis-Chalmers Manufacturing Company, the manufacturer, was called in to review the machine and after their inspection the motor was dismantled and shipped to Milwaukee, Wisconsin for repairs. The repaired machine was returned to plaintiff's plant and placed back into operation on January 29, 1969. This business interruption is the basis of the loss claimed.

In considering the availability of summary judgment we must first search for the genuine issues of material fact which exist.

Defendant's evidentiary material is concerned with expert engineering opinion as to the cause of the malfunction and the summary of their conclusions is that the initial fit of the shaft to the spider was inadequate and below industry standards for the proper design, and that this was a defect which existed from the time that the motor was manufactured. The opinion also concluded that the failure was not due to control or operation of the motor by plaintiff.

If we accept the truth of the defendant's contentions for the purpose of this motion, is there any dispute as to a material fact essential to the resolution of the question of coverage for "sudden and accidental damage"?

It is also not disputed that there was no external physical evidence of damage to the machine in the form of breaking, gouging or scraping of its parts.

■ The question of whether these two elements present genuine issues of material fact rests, in our opinion, on whether the definition of "accident" requires a consideration of either of them. In other words, is it necessary to a determination of the meaning of "sudden and accidental damage" that we know the cause thereof? Furthermore, it is necessary that the machine show external physical damage to itself to be included under the definition.

Defendant's expert opposing the motion expressed the opinion that the incident of January 20, 1969, was caused by an improper fit at the time of manufacture and installation of the motor and continuing gradually throughout the operation of the motor. He stated that this was progressive wear and tear between the spider and the shaft which gradually increased the vibrations until the time of the shut-down. And that such vibration could have been discovered by the use of sophisticated scientific equipment.

The policy definitions exclude from the term "accident" such terms as "depletion, deterioration, corrosion, or erosion of material", and "wear and tear".

Does the defendant's expert opinion create a genuine issue of material fact?

It appears to us that for the purpose of this motion the plaintiff does not dispute the defendant's contentions, but asserts that the coverage exists under the circumstances.

The conditions of recovery under the policy are that the machine must suffer

A. damage

and that the damage must be

B. sudden, and

C. accidental

and that the damage must be such as to necessitate

D. repair or replacement.

As to the last requirement there is no dispute that the condition of the motor required repair.

Therefore, we must turn to the definition of the remainder of the terms employed.

"Words of common usage in a policy of insurance will be construed in their natural, plain, and ordinary sense . . .". Blue Anchor Overall Co. v. Pa. Lumb. M.I. Co., 385 Pa. 394, 123 A.2d 413, 415 [1956]

SUDDEN:

Webster's Seventh New Collegiate Dictionary:

"Happening or coming unexpectedly."

Black's Law Dictionary:

"Happening without previous notice or with very brief notice; coming or occurring unexpectedly; unforeseen; unprepared for."

Foble v. Knefely, 176 Md. 474, 6 A.2d 48, 53 [1939]:

". . . Happening without previous notice, or with very brief notice; coming unexpectedly; rapid and unforeseen; . . . unusual; abrupt; unlooked for."

New England Gas & Elec. Ass'n v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 116 N.E.2d 671, 680, 681 [1953]:

". . . [N]o one knew the cause of the damage until after the spindle had been replaced. The damage to the spindle could not be reasonably anticipated, and its occurrence was unexpected and unforeseen and consequently sudden in the ordinary meaning of the word."

ACCIDENTAL:

Webster's Seventh New Collegiate Dictionary:

"Occurring by chance or unexpectedly."

Black's Law Dictionary:

"Happening by chance, or unexpectedly; taking place not according to usual course of things; casual; fortuitous."

Foble v. Knefely, 176 Md. 474, 6 A.2d 48, 53 [1939]:

"While the word accident connotes suddenness, it does not necessarily imply that the occurrence is instantaneous . . . [A]n accidental injury may be one caused by conditions extending over a substantial period of time."

Mutual Acc. Ass'n. v. Barry, 131 U.S. 100, 121, 9 S.Ct. 755, 762, 33 L.Ed. 60 [1889]:

"The court properly instructed (the jury) that . . . the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected' . . . if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

DAMAGE:

Webster's Seventh New Collegiate Dictionary:

"Loss or harm resulting from injury to person, property, or reputation."

Black's Law Dictionary:

"Loss, injury, or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property. . . . By damage, we understand every loss or diminution of what is a man's own, occasioned by the fault of another. The harm, detriment, or loss sustained by reason of an injury."

American Stevedores v. Porello, 330 U.S. 446, 450 n.6, 67 S.Ct. 847, 850, 91 L.Ed. 1011 [1947]:

"Black's Law Dictionary cautions that the word 'damage,' meaning 'Loss, injury, or deterioration,' is 'to be distinguished from its plural,—"damages," —which means a compensation in money for a loss or damage.' "

In re City of Pittsburgh, 243 Pa. 392, 90 A. 329, 331 [1914]:

"These words 'damage,' 'loss,' 'injury' are used interchangeably, not simply in this particular statute, but generally; within legislative meaning and judicial interpretation they import the same thing."

Heart of America Lumber Co. v. Belove, 28 F.Supp. 619, 620 [W.D.Mo.1939]:

"A building is 'damaged' by fire if it 'receives damage' from fire (Webster's International Dictionary, definition of 'damage,—v.i.') It 'receives damage' from fire if it sustains 'injury' from fire (Webster's International Dictionary, definition of 'damage,— n.')."

DEPLETION:

Black's Law Dictionary:

"An emptying, exhausting or wasting of assets . . . A reduction during taxable year of oil, gas or other mineral deposits or reserves as result of production."

DETERIORATION:

Black's Law Dictionary:

"Of a commodity, a constitutional hurt or impairment, involving some degeneration in the substance of the thing, such as that arising from decay, corrosion, or disintegration."

CORROSION:

Webster's New International Dictionary:

"Action or effect of corroding, or of corrosive agents; the process of corrosive change. *Corrosion* is now generally used of a gradual wearing away or disintegration by a chemical process."

EROSION:

Webster's New International Dictionary:

"Act of eroding, or state of being eroded."

Erode—"To eat into or away; to destroy by slow disintegration; to corrode."

■ The terms "depletion", "deterioration", "corrosion" and "erosion" of material, in common understanding can mean no more than the action of normally expected elements of stress, friction, and the daily traumas of its life to the object during its normal life expectancy.

WEAR AND TEAR:

Webster's Seventh New Collegiate Dictionary:

. "The loss or injury to which something is subjected by or in the course of use; *esp:* normal depreciation."

Black's Law Dictionary:

" 'Natural wear and tear' means deterioration or depreciation in value by ordinary and reasonable use of the subject-matter. Green v. Kelly, 20 N. J.L. 544."

■ The defendant argues that certain judicial definitions of the phrase "wear and tear" are inapplicable here because, in the instant policy, "wear and tear" is not modified by any adjective, whereas in Moran Towing Corp. v. M. A. Gammino Const. Co., 363 F.2d 108, 114 [1st Cir. 1966] the insurance policy recited *"ordinary* wear and tear", and in Peper v. St. Louis Brass Mfg. Co., 146 Mo.App. 187, 123 S.W. 1012, 1015 [1909] the policy recited *"natural* wear and tear". (Emphasis supplied). However, construing the words "wear and

tear" in their everyday common usage, we are convinced that the words "wear and tear" mean simply and solely that ordinary and natural deterioration or abrasion which an object experiences by its expected contacts between its component parts and outside objects during the period of its natural life expectancy. We do not find that the modifiers "ordinary" or "natural" add anything to the commonly understood meaning of "wear and tear".

As a legal term "wear and tear" is almost always used in connection with leases of real or personal property providing that the property be returned to the lessor at the end of the lease term in as good condition as when it was delivered excepting for "wear and tear", or "natural wear and tear" or "ordinary wear and tear". We find the use of the modifiers "natural" or "ordinary" to be a typical lawyer's redundancy. The legal indices for "wear and tear" are cross-indexed to "ordinary wear and tear" or "natural wear and tear".

■■ The parties are in dispute as to whether the "cause" of the damage is an essential element of proof. Plaintiff does not dispute defendant's evidence as to "cause", but asserts that under the policy provisions applicable "cause" is not an issue in this damage claim. Again we must examine all of the policy provisions. We do not find that the definition of "accident" requires any consideration of the term "cause". The term "accident" requires only "sudden and accidental damage" which "necessitates repair", and we find these conditions met.

Therefore we turn to the exceptions from coverage to determine whether "cause" is a material element. We note only one exception, clearly not applicable here, in which "cause" is an element, i. e.

"F. The explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the gas passages therefrom to the atmosphere."

In New England Gas & Elec. Ass'n. v. Ocean Acc. & Guar. Corp., *supra,* the court was concerned with defining the words "sudden and accidental breaking". It held that the words "sudden and accidental" modified the word "breaking".

> "They describe a result and they do not refer to any means by which that result has been brought about." 116 N.E.2d at p. 679.

The court held that "[t]he cause, however, need not be sudden." It is enough if the mechanical breakdown is sudden. [p. 680 idem].

The above-cited case is the closest case on its facts to the present case that our research or the briefs of counsel has revealed. It involved an electric turbine with a revolving shaft and spindle. The damage was disclosed by sudden violent vibration. In that case, as in the instant one, the contention of the defendant was that an initial missetting of support springs caused a misalignment of a spindle. The combination of normal forces on the shaft with the initial misalignment ultimately caused a crack in the shaft which immediately evidenced its existence by severe vibration in the machine. The court found all of these elements to meet the requirements of the policy definition of a "sudden and accidental breaking".

The policy in the instant case does not limit its coverage to damage by accidental means; it speaks of "sudden and accidental damage to an object" regardless of the means by which that came about.

In our view of this matter we are satisfied that no genuine issue of material fact exists which prevents our determining the case as a matter of law. Accepting the defendant's evidentiary material as established, there remains no controversy between the parties over factual issues. Therefore, although the "cause" of the damage is alleged to be an improper initial fit of wheel and axle, which produced gradual weakening and loosening of the fit, the essential elements of coverage have been established and none of the exclusions have been established as applicable. The machine suffered sudden and accidental damage which necessitated repair. The sudden and accidental damage was not depletion, deterioration, corrosion or erosion, nor was it wear and tear.

We conclude that the defendant is liable under the policy for the business interruption loss suffered by plaintiff.