## HEART OF AMERICA LUMBER CO.
## v. BELOVE.
### No. 244.

District Court, W. D. Missouri, W. D.
Aug. 9, 1939.

Laucie L. Watts and Paul E. Basye, both of Kansas City, Mo., for plaintiff.

Ringolsky, Boatright & Jacobs, of Kansas City, Mo., for defendant.

OTIS, District Judge.

Pursuant to Rule 56, 28 U.S.C.A. following section 723c, defendant has moved for summary judgment in this jury waived case (neither party has demanded a jury) in which plaintiff has brought suit for damages for alleged breach of contract. The contract sued on—a Kansas contract—was one leasing a three story brick building in Kansas City, Kansas, for a term of five years beginning June 1, 1936. The parties to the contract, as they appear from the signatures, were the defendant, as lessor, and one J. E. Turner, as lessee. (The petition alleges that Turner was acting as agent for plaintiff.) The contract contained the following provision "In case the building leased hereunder should become so damaged by fire as to render the same untenantable for use, the lessor agrees to repair the same within such reasonable time as may be necessary for the making of such repairs, and during each period only on such account as the lessee may be deprived of the use of or occupancy of such premises, the monthly payment of rent as herein expressed, may be suspended, but such condition shall in no wise affect the period for which this lease is to run."

On January 23, 1939, the building was burned. The defendant erected another building on the same site—a one story building. The new building was leased by defendant to another than plaintiff. The plaintiff alleges that the defendant so evicted plaintiff and so breached its contract and damaged plaintiff. The contractual obligation of defendant, plaintiff claims, was to repair the damaged building and then permit plaintiff to continue to occupy it at the rent stipulated in the lease.

The defendant's Motion for Summary Judgment presents two principal contentions. (1) There is no genuine issue touching the extent of the injury from fire to the building leased; the building was destroyed; as a matter of law, if a leased building is destroyed by fire the lease is terminated, even though it contains such a provision as that set out in the preceding paragraph. (2) There is no genuine issue but that the plaintiff was not the lessee. Plaintiff, therefore, cannot recover for breach of the contract, if there was a breach.

It is provided in Rule 56 that "The judgment sought [by the motion for summary judgment] shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that * * * there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Now it is the contention of the defendant that the building leased was destroyed (not merely damaged) by fire. The extent of the injury to the building certainly is a question of fact. But what is theoretically a question of fact may be resolved in ruling a Motion for Summary Judgment if it is determined that there is no genuine issue. We think there is no genuine issue here touching the extent of the injury to the building.

Plaintiff's petition alleges that J. E. Turner was plaintiff's agent. An exhibit attached to the petition indicates that he was Treasurer of plaintiff. The only affidavit plaintiff filed in connection with the Motion for Summary Judgment was Turner's affidavit. We are justified, we think, in saying that the plaintiff does not contend that there is any genuine issue concerning any fact admitted by Turner.

An affidavit filed by defendant on July 25, 1939, and served on plaintiff's counsel on that day sets out extracts from two letters to defendant written for plaintiff and signed by Turner as follows—

From a letter dated January 24, 1939:
" * * * the building was entirely gutted. All floors fell through into the sub basement and only the walls left standing. So the building I would say was a total loss."

From a letter dated January 26, 1939:
"I received your wire and in reply will advise that the building is a total wreck. The third second and first floors fell in on the basement floor and carried the whole thing down into the sub-basement."

The affidavit of Turner which the plaintiff itself filed on the day before the hearing on August 4, 1939 (after receiving a copy of defendant's affidavit on July 25, 1939), does not deny the statements taken from Turner's letters but describes the extent of the injury to the building from fire thus "On January 23, 1939, a fire practically destroyed the premises. The roof fell in, likewise the third floor. Part of the first and second floors fell into the basement, while parts of each floor remained intact. The party walls were intact. * * * The front and rear walls were practically intact except for the windows."

### Damaged or Destroyed.

Whether the first contention made by defendant shall prevail turns upon the construction which is given the contract. "In case the building leased * * * should become so damaged by fire as to render the same untenantable for use, the lessor agrees to repair the same within such reasonable time as may be necessary for the making of such repairs,"—so runs the contract. But does that provision impose on the lessor the duty of restoring a destroyed building? A building is "damaged" by fire if it "receives damage" from fire (Webster's International Dictionary, definition of "damage,—v. i.") It "receives damage" from fire if it sustains "injury" from fire (Webster's International Dictionary, definition of "damage,—n."). An agreement to "repair" a building is an agreement "to restore (it) to a sound or good state after decay, injury, dilapidation, or partial destruction." (Webster's International Dictionary, definition of "repair,—v.") Certainly a building which is destroyed by fire is more than damaged (who would say of a house razed to the ground,—"that house has been damaged?") Certainly a building altogether destroyed cannot be repaired (who would say of a contractor building a new house on the site of an old house—"he is repairing the old house.")

But when is a building destroyed? Is it only when the bricks of which it was constructed not only have been thrown down but also have been resolved into their original elements and when even the nails have lost their identity and become mere unformed blobs of metal? To say that a building is destroyed only when there has been such a total annihilation of its parts is to use the word in a sense in which it never is used in common speech. Would anyone say that the Parthenon was not destroyed by the explosion which shattered it in 1687? But the foundation is still sound, the approaches are not greatly changed, the columns of marble, some of them, still rise, even portions of the superstructure remain. Yet the Parthenon is no more and there is none to rebuild it. It is only a part of its skeleton that lies there on the Acropolis.

Without attempting to indicate the precise line separating the mere damaging of a building from the destruction of a building, we are certain that a building has been destroyed as a building when the roof has fallen in, parts of the floors have fallen through to the basement, the front and rear walls in part have fallen, when, in short, the building has been "practically destroyed." (Facts and conclusion from Turner's affidavit filed by plaintiff.) We are certain that a building has been destroyed as a building when it has been "entirely gutted" by fire, when "all floors (have fallen through) into the sub basement and only the walls (are) left standing * * * a total loss," when "The third, second and first floors fell in on the basement floor and carried the whole thing down into the sub-basement." (Quotations from Turner's letters to defendant.)

We make this formal finding—that there is no genuine issue but that the building leased was not merely damaged by fire, so that it could be repaired. The building was destroyed by fire.

The contract did not obligate the lessor to rebuild for the lessee if the building was destroyed by fire.

Since the contract contained no express provision for the contingency of destruction of the leased building by fire, the effect of such destruction was to terminate the contract. Whitaker v. Hawley et al., 25 Kan. 674, 37 Am.Rep. 277; O'Neal v. Bainbridge, 94 Kan. 518, 146 P. 1165, Ann. Cas.1917B, 293; Saylor v. Brooks, et al., 114 Kan. 493, 220 P. 193. The cases cited from the Kansas Supreme Court are not as positive as they might be in declaring the rule of law we have stated, but they strongly suggest it. See Gamble-Robinson Co. v. Buzzard et al., 8 Cir., 65 F.2d 950, 953.[1]

It is unnecessary to discuss defendant's second contention.

This cause coming on to be heard on defendant's Motion for Summary Judgment under Rule 56 and the Court having considered the Motion, the pleadings and affidavits on file, and the argument and briefs of counsel and being fully advised in the premises, it is ordered, adjudged and decreed (1) that the defendant's Motion for Summary Judgment be and the same is sustained, (2) that the plaintiff have and recover nothing from the defendant, and (3) that the costs be assessed against the plaintiff.

---

[1] We agree with Judge Sanborn, speaking for the Eighth Circuit Court of Appeals in Gamble-Robinson Co. v. Buzzard et al., that the Kansas cases indicate that the rule of the common law (i. e., that a lessee is bound to pay rent even although the premises are destroyed by fire) is not adhered to in Kansas. We follow Judge Sanborn's interpretation of the cases. But also we must agree with learned counsel for plaintiff that the Kansas cases fall a little short of a clear repudiation of the common law rule. Judge (later Mr. Justice) Brewer, who wrote the admirable opinion in Whitaker v. Hawley, certainly earnestly challenged the common law rule and strongly intimated that it is not in force in Kansas. The opinion in O'Neal v. Bainbridge is indefinite and evasive, but it does recognize the theory that the destruction of leased property terminates the lease. The opinion in Saylor v. Brooks speaks in an approving tone (but not in definite approval) of what was said by Judge Brewer in Whitaker v. Hawley. The cases cited are the only guideposts we have to what is the Kansas law. Whether the common law rule has or has not been repudiated in Kansas, the plaintiff cannot prevail unless the contract here specifically provides for the contingency of destruction of the leased premises. We think it does not provide for such a contingency.