Norbert L. CODY et al., Appellants,

v.

UNION ELECTRIC COMPANY et al., Appellees.

No. 76–1222.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1976.

Decided Dec. 2, 1976.

Doris G. Black, St. Louis, Mo., for appellants.

John H. Poelker and Paul J. Simon, Robert C. McNicholas, Associate City Counsel-

or, St. Louis, Mo., for appellee City of St. Louis; Jack L. Koehr, City Counselor and Robert C. McNicholas, Associate City Counselor, St. Louis, Mo., on brief.

Francis X. Duda, St. Louis, Mo., for appellee, Union Electric Co.; William H. Ferrell and Francis X. Duda, St. Louis, Mo., on brief.

Before LAY and BRIGHT, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

Norbert L. Cody and others (Cody plaintiffs) complain that Union Electric, a Missouri public utility corporation, and other defendants violate the constitutional rights of black persons residing in St. Louis, Missouri, by requiring that blacks pay higher security deposits as a condition of obtaining electric service than similarly situated white persons. This complaint first came before us in *Cody v. Union Electric Co.*, 518 F.2d 978 (8th Cir. 1975), where we held that although the complaint did not allege a claim cognizable under 42 U.S.C. § 1983, it did state a claim under 42 U.S.C. § 1981. On remand to the district court, the Cody plaintiffs filed an amended complaint to omit allegations of jurisdiction under § 1983, but asserted that Union Electric, through its members, and the City of St. Louis, through its mayor and aldermen, and the Missouri Public Service Commission, through its commission members, were following racially discriminatory policies and practices in violation of 42 U.S.C. §§ 1981 and 1985.

The amended complaint seeks injunctive relief and damages, individually and on behalf of other black persons as a class, and a declaratory judgment invalidating an order of the Missouri Public Service Commission which authorizes electric utilities to obtain security deposits from their customers.

Although defendants sought dismissal of the amended complaint on various grounds, the district court adopted a theory not addressed by the parties. The district court treated the complaint as one seeking injunctive relief against an order affecting public utility rates, and, under authority of the Johnson Act of 1934, 28 U.S.C. § 1342, dismissed the action. *Cody v. Union Electric Co.*, 410 F.Supp. 307 (E.D.Mo.1976). The district court erred. The Johnson Act does not apply to this civil rights complaint. This action raises no challenge to electric rates, but attacks a credit policy of Union Electric which allegedly unlawfully discriminates on a racial basis.

The Johnson Act reads:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State. [28 U.S.C. § 1342.]

Missouri Public Service Commission General Order 20, Rule 12, as pertinent, provides as follows:

Each utility may require from any consumer at any time a cash deposit, or, at its option, a personal guaranty of a responsible person; provided that the amount of any such deposit or guaranty so required shall not exceed an estimated bill covering one billing period plus thirty days.[1]

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The rule further reads:

Interest at the rate of 6% per annum covering the period of the deposit shall be paid by the utility to the consumer, or applied to the consumer's account, upon return of any

The complaint simply and directly charges, with respect to Union Electric's exaction of security deposits, the following:

27. That plaintiffs are each black businessmen who have been required to pay security deposits either before electrical services could be commenced, or in order that electrical services would be continued.

28. That defendants' policies and practices are such that white businessmen are not usually required to pay security deposits and when or if so required, the amounts of security deposits paid are significantly smaller that [sic] the amounts which Union Electric requires of black businessmen.

33. That defendants have intentionally, willfully, maliciously and wantonly carried on such discriminatory policies and practices to exclude the Plaintiffs from the full and equal enjoyment of the privileges and services as every other citizen, solely because of plaintiffs race and color. The defendants have implemented their policy among other ways by:

(a) by requiring a larger cash security deposit of black businessmen than white businessmen.

(b) by refusing to give black businessmen the same terms and conditions with respect to initiating electrical service as those enjoyed by white persons doing business in the City of St. Louis.

A fair reading of the complaint discloses no attack upon the rates charged by Union Electric for its services, or upon any rate order promulgated by the Missouri Public Service Commission. Nowhere in the text of General Order 20, Rule 12, is the public utility empowered to assess credit deposits as part of authorized revenues for electric service. Indeed, under the rule, the deposited moneys must be held in trust by the utility to be returned to the customer or applied to the customer's bill. The complaint does not challenge an "order affecting rates," it assails the utility's allegedly racially discriminatory credit practices. The allegations of the complaint assert racially discriminatory conduct by the utility, which, if proved, justify federal remedial action.

The cases cited by Union Electric and relied upon by the district court are not to the contrary. For example, in *Tennyson v. Gas Service Co.*, 506 F.2d 1135 (10th Cir. 1974), consumers brought an action under 42 U.S.C. § 1983 challenging late charge assessments, *i. e.*, additional charges imposed upon utility customers who do not pay their utility bills on time. The Kansas state administrative body exercising jurisdiction over utility rates had specifically authorized the assessment of such "late charges" as part of utilities' revenues. Thus, as our colleague Talbot Smith, then sitting with the Tenth Circuit, explained for that court, the late charges fell within the parameters of the Johnson Act:

> Since the late charges made were presented to the Commission as an integral part of the rate structures and so ruled upon by the Commission, it is clear that its rulings were orders "affecting" rates within the terms of the Act. [*Id.* at 1140.]

To the same effect are *General Investment & Service Corporation v. Wichita Water Company*, 236 F.2d 464 (10th Cir. 1956); *Zucker v. Bell Tel. Co. of Penn.*, 373 F.Supp.

deposit to the consumer or the application of such deposit to the consumer's account; provided such cash deposit remains for a period of at least six months; provided, further, that the rate of interest of such cash deposit shall be only three per cent (3%) per annum if the utility keeps such cash deposit in a separate and distinct trust fund and deposited as such in some bank or trust company and not used by the utility in the conduct of its business.

The provisions of this rule shall not apply to any deposits or guarantees made by consumer for the purpose of securing an extension of or additions to a utility's distributing system in accordance with the utility's rules and regulations covering such extensions as filed with this Commission.

Interest shall not accrue on any cash deposit after the date the utility has made a bona fide effort to return such deposit to the depositor. The utility shall keep in its records evidence of its effort to return such deposit.

748 (E.D.Pa.1974), *aff'd*, 510 F.2d 971 (3d Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975); and *DeKalb County, Georgia v. Southern Bell Tel. & Tel. Co.*, 358 F.Supp. 498 (N.D.Ga.1972), *aff'd*, 478 F.2d 700 (5th Cir. 1973). These cases do not apply to the facts alleged in the complaint here in question. Although *David v. New York Tel. Co.*, 341 F.Supp. 944 (S.D.N.Y.1972), did apply the Johnson Act to a suit involving a telephone deposit requirement, the complaint in that case failed to state a federal claim, and the Second Circuit affirmed the dismissal on that basis alone, 470 F.2d 191 (2d Cir. 1972).

We, of course, do not pass upon the merits. However, this litigation has been before the courts for approximately two years. Plaintiffs have suffered two summary dismissals without the opportunity to obtain discovery, or obtain class certification for any aspect of the remedies sought or to litigate the merits of the action.

We make the following observations about this action that may be of assistance to the parties and to the district court in obtaining a prompt resolution of the merits of this case.

1) The claim against the City of St. Louis and its officials appears to rest on tenuous grounds. At oral argument, attorneys for St. Louis advised that the city receives a percentage of Union Electric's gross receipts in the nature of a tax, but no benefit from security deposits.[2]

2) Plaintiffs should reassess the validity of their claims for damages against the Missouri Public Service Commission and its members. Unless plaintiffs can show that the members of that Commission participated in Union Electric's alleged unlawful conduct, no basis exists for a damage remedy. Injunctive and declaratory relief against these defendants may be proper in order to define and limit the utility's power to obtain credit deposits.

3) The district court should promptly consider and determine whether class action status should be authorized for plaintiffs for all remedies sought, *i. e.,* declaratory and injunctive relief and damages, or only for injunctive and declaratory remedies, or whether class action status is wholly inappropriate.

We reverse and remand for further proceedings in the district court consistent with this opinion. Let our mandate issue forthwith.

---

2. The city and its officials have moved for summary disposition of the appeal on grounds that appellants failed to properly serve an amended complaint upon these defendants. We denied the motion. [*See* order of June 7, 1976.] It is unnecessary to reach the merits of that motion. On remand, plaintiffs-appellants may effect proper service if they desire to do so.