556 F.2d 400
 IOWA PUBLIC SERVICE COMPANY, Iowa Southern Utilities
Company, Iowa Power and Light Company and
Iowa-Illinois Gas and Electric Company, Appellants,
v.
MEDICINE BOW COAL COMPANY, Dana Coal Company and Hanna Basin
Coal Company, Appellees.
 No. 77-1040.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 19, 1977.
Decided June 8, 1977.
 
 Anthony J. Stoik, Sioux City, Iowa, for appellants; Marvin J. Klass and Robert D. Mishne, Sioux City, Iowa, on brief.
 Thomas C. Walsh, St. Louis, Mo., for appellees; Robert M. Lucy and William F. Tracy II, St. Louis, Mo., on brief.
 Before HEANEY, BRIGHT and HENLEY, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 This case presents an interesting and somewhat unusual problem concerning the jurisdiction of a federal district court with respect to a case removed to it from a state court on the ground of diversity of citizenship. 28 U.S.C. § 1441(a).
 
 
 2
 Plaintiffs Iowa Public Service Company (IPS), Iowa Southern Utilities Company (Iowa Southern), Iowa Power and Light Company (IPL) and Iowa-Illinois Gas and Electric Company (Iowa-Illinois), appeal from three orders entered in January of the current year by the United States District Court for the Northern District of Iowa (Judge Edward J. McManus), dismissing from the case as plaintiffs Iowa Southern, IPL and Iowa-Illinois, and leaving the case as a controversy between IPS, an Iowa corporation having its principal place of business in Iowa, on the one hand, and the defendants Medicine Bow Coal Company, Dana Coal Company and Hanna Basin Coal Company, all of which for jurisdictional purposes are citizens of states other than Iowa.[1]
 
 
 3
 In connection with each of the orders that have been mentioned the district court determined, as provided by Fed.R.Civ.P. 54(b), that there was no just reason for delay and directed that the judgments be entered. Appellate jurisdiction is based on 28 U.S.C. § 1291.
 
 
 4
 While the appeals are from the judgments of the district court dropping from the case all of the plaintiffs except IPS, those judgments are underlaid by an earlier order entered in December, 1976 overruling a motion to remand the case in its entirety to the District Court of Woodbury County, Iowa where it was commenced by the plaintiffs and whence it was removed by the defendants. In connection with that earlier order the district court refused to issue a certificate for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The same order determined that the motion of the defendants to dismiss the case as to all plaintiffs, except IPS, pursuant to Fed.R.Civ.P. 21, should be granted. In connection with that order the district court filed a memorandum opinion setting out its views on the jurisdictional question before it.
 
 
 5
 As has been noted, there is no diversity of citizenship between Iowa-Southern and Dana Coal Company. Notwithstanding the absence of complete diversity between all of the plaintiffs, on the one hand, and all of the defendants, on the other hand, the defendants removed the case on the theory that none of the plaintiffs except IPS was a real party in interest, and that the joinder of the other plaintiffs, including Iowa-Southern, was an impermissible device to prevent the removal of the case to the federal court.[2]
 
 
 6
 In support of their motion to remand, the plaintiffs contended that all of them were real parties in interest and that there was absence of complete diversity of citizenship. They also contended that the amount in controversy did not exceed $10,000.00, exclusive of interest and costs.
 
 
 7
 The district court rejected both of those contentions and refused to remand the case. From that action the later dismissals from the case of all of the plaintiffs save IPS was a natural consequence. It is clear, therefore, that the correctness of the judgments of dismissal based on Rule 21 depends upon the propriety of the earlier action of the district court in overruling the motion to remand since if the district court had no jurisdiction of the case, it had no authority to order dismissals under Rule 21 or any other rule. It should simply have remanded the case to the state court.
 
 
 8
 For reversal plaintiffs contend, as they did in the district court, that the dismissed plaintiffs were real parties in interest and were at least proper parties to the action, and that, in any event, the requisite jurisdictional amount was not present in the case. The defendants, naturally, contend to the contrary.[3]
 
 
 9
 The jurisdictional facts of the case are comparatively simple. Plaintiffs are public utilities serving customers in Iowa and perhaps in adjoining states. Prior to July 1, 1974, the plaintiffs entered into a contract of joint venture for the operation of a steam generating plant in Woodbury County, Iowa, for the purpose of producing electric power. IPS was a member of the joint venture and was in charge of the actual operation of the plant. Presumably, electricity produced at the plant would be distributed among the plaintiffs, and the several plaintiffs would share in the cost of operating the plant.
 
 
 10
 On July 1, 1974 IPS, acting for the joint venture, entered into a long time contract with the defendants for the acquisition of coal to be mined in Wyoming. The coal was to be used for fueling the generating plant in Iowa. IPS was described in the contract as the buyer of the coal, and the coal companies were referred to as the sellers. The contract recited that Medicine Bow Coal Company was a joint venture owned by the other two defendants, but no mention was made in the contract of the fact that IPS was a member of any joint venture made up of power companies or that it was contracting on behalf of any joint venture or any third party. The coal was to be delivered FOB at the mine site.
 
 
 11
 The contract specified the quantities of coal to be delivered and the initial prices per ton that were to be paid for the coal by IPS. It was provided in substance, however, that if during the life of the contract the market price of coal should fluctuate substantially up or down, the price schedules set out in the contract would be subject to reopening for negotiation, and that should negotiation fail, the matter should be submitted to binding arbitration.
 
 
 12
 The defendants have contended consistently, and the district court in effect found, that they knew nothing about the joint venture of which IPS was a member, and that at all pertinent times they thought that they were dealing solely with IPS. We will proceed on that premise.
 
 
 13
 By the early summer of 1976 the coal companies were taking the position that the price schedules of the contract were subject to reopening, and in August of that year they demanded arbitration as provided by the contract.
 
 
 14
 Plaintiffs filed this suit for declaratory and injunctive relief in the state court in October, 1976. It was alleged that the contract executed by IPS had been on behalf of the joint venture of all four plaintiffs. Plaintiffs prayed for a declaratory judgment to the effect that the price schedules were not subject to reopening at the time and that they were not required to arbitrate, and plaintiffs also sought a temporary and permanent injunction restraining the defendants from taking any further steps to secure arbitration. On October 19, 1976 a temporary injunction was issued by the state court on the ex parte application of plaintiffs. A timely removal petition was filed by the defendants on November 5, 1976.
 
 
 15
 In the removal petition it was alleged that IPS was the only plaintiff that had executed the contract with the defendants and was the only proper, necessary, or indispensable party plaintiff in the action. With respect to the other plaintiffs, it was alleged "That they have been joined as parties in a fraudulent effort by plaintiffs to deprive defendants of their right to remove the action to federal court. They should be disregarded for the purposes of determining the removability of said action to this Court and should be dropped from said action pursuant to defendants' motion which is filed herewith."
 
 
 16
 As to jurisdictional amount, the petition alleged that due to increasing coal prices the defendants were entitled to receive from IPS under the contract higher prices amounting to approximately $225,000.00 per month.
 
 
 17
 Defendants' motion to drop parties was in fact filed contemporaneously with the removal petition, and plaintiffs' motion to remand was filed four days later.
 
 
 18
 We have no trouble with the district court's determination that the amount in controversy in this case exceeds $10,000.00 exclusive of interest and costs. With respect to contract years beginning after June 30, 1976, the coal companies are obligated to deliver under the contract not less than 600,000 short tons of coal per year. In view of generally rising prices and production costs, it is obvious that whether the amount in controversy is measured from the standpoint of the plaintiffs or whether it is measured from the standpoint of the defendants, the financial consequences of the litigation will be far more than $10,000.00. If plaintiffs prevail, they will save the difference between the contract price and any higher price that may be fixed by the arbitrator; if the defendants prevail they will be entitled to the benefit of that difference. In this period of inflation there is little reason to believe that the arbitrator would adjust the contract price downward in favor of the power companies.
 
 
 19
 We do not agree with the district court in its conclusion that Iowa Southern, IPL and Iowa-Illinois are not real parties in interest and that federal jurisdiction should be retained notwithstanding the absence of diversity of citizenship between Iowa Southern and Dana Coal Company.
 
 
 20
 As the district court correctly observed, in a case where there are plural plaintiffs and plural defendants a federal court does not have diversity jurisdiction unless there is diversity between all plaintiffs and all defendants. City of Indianapolis v. Chase Nat'l Bank, Trustee, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939); Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866 (8th Cir. 1966); Thomson v. Butler, 136 F.2d 644 (8th Cir.), cert. denied, 320 U.S. 813, 64 S.Ct. 156, 88 L.Ed. 491 (1943). However, if the "nondiverse" plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628 (1924); Nunn v. Feltinton, 294 F.2d 450 (5th Cir. 1961), cert. denied, 369 U.S. 857, 82 S.Ct. 932, 8 L.Ed.2d 16 (1962); 6 Wright & Miller, Federal Practice & Procedure § 1556 at 710 (1971). And such a party may be dropped from the case. First Nat'l Bank of Chicago v. Mottola, 302 F.Supp. 785 (N.D.Ill.1969), aff'd sub nom. First Nat'l Bank of Chicago v. Ettlinger, 465 F.2d 343 (7th Cir. 1972). However, if the nondiverse plaintiff is a real party in interest, the fact that his joinder was motivated by a desire to defeat federal jurisdiction is not material. 14 Wright, Miller & Cooper, Federal Practice & Procedure, § 3641 at 111 (1976), Cf. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931).[4]
 
 
 21
 The "real party in interest" is the person who, under governing substantive law, is entitled to enforce the right asserted, and in a diversity case, the governing substantive law is ordinarily state law, in this case the law of Iowa. 6 Wright & Miller, supra, §§ 1543-44, and cases cited.[5]
 
 
 22
 The memorandum opinion of the district court indicates that although the district judge assumed for purposes of argument that IPS was a member of the joint venture, he decided the jurisdictional question before him as though Iowa Southern, IPL and Iowa-Illinois were sole plaintiffs suing in their own names on a contract executed in their behalf as undisclosed principals by an undisclosed agent. The district judge determined that because the contract described IPS as the "buyer" of the coal and did not indicate that IPS was acting for or in conjunction with any other parties, the case did not come within the general rule that an undisclosed principal may sue in his own name on a contract made for his benefit. On that basis he decided that IPS was the only real party in interest in the case, and that the other plaintiffs were unnecessary parties which should be dropped from the case. To put it slightly differently, the district judge seems to have been of the view that since the complaint, to the extent that it involved and dismissed plaintiffs, did not state a cause of action against the defendants, those plaintiffs were not real parties in interest, and that the citizenship of Iowa Southern could be ignored for jurisdictional purposes.
 
 
 23
 The district court did not cite any Iowa authority in support of its decision. It did cite and rely upon the holding of this court in Heart of America Lumber Co. v. Belove, 111 F.2d 535 (8th Cir. 1940), aff'g 28 F.Supp. 619 (W.D.Mo.1939), a case that involved a lease of business premises located in Kansas City, Kansas. The lease was executed by the owner of the premises as lessor and by a corporate officer who signed the lease as lessee without disclosing that he was acting as agent for his corporate principal. During the term of the lease the leased premises were destroyed by fire, and the corporation sued in its own name for damages allegedly resulting from the refusal of the lessor to rebuild, it being the position of the plaintiff that the building had not been destroyed but only heavily damaged. There was diversity of citizenship between the parties and the requisite amount in controversy. The defendant moved for summary judgment, and District Judge Otis concluded that there was no genuine issue as to a material fact, that the building had been destroyed and not merely damaged, and that the defendant was not obligated to rebuild.
 
 
 24
 On appeal this court approved the district court's findings and affirmed the decision on the basis of those findings and on the further basis that the corporation could not maintain the suit in view of the nature of the contract. In that connection it was said:
 
 
 25
 It is the claim of the plaintiff that it may maintain this action as an undisclosed principal. It is generally held that the undisclosed principal is a party to the contract and may bring suit to enforce it, and it may be enforced against him, unless the contract is a negotiable instrument or a contract under seal. But the contract and circumstances may be such as to preclude the contention that the party seeking to enforce it was an undisclosed principal. If the agent acting for an undisclosed principal so acts or contracts that a claim that he is the contracting party and not an agent for an undisclosed principal appears to exist as an essential part of the contract, or the relationship appears as the assertion of a material fact bearing on the interrelationship of the parties or the character in which they contracted, the undisclosed principal will not be made or permitted to make himself a party. Thus, where an agent is referred to in the contract as the owner of the property with reference to which he contracts, this description is not to be changed by the substitution of another who claims that status with reference to the property, though he do it as an undisclosed principal.
 
 
 26
 111 F.2d at 537-38.
 
 
 27
 We think that the district court's reliance on the Belove case was misplaced. In the first place, no claim was made that the corporate plaintiff in Belove was not a real party in interest. Nor did the court of appeals hold that the plaintiff in that case was not a real party in interest; it simply held that the plaintiff could not enforce the contract. The fact that a plaintiff's claim may lack legal or factual merit does not necessarily mean that he lacks standing to assert the claim as a real party in interest. In the second place, the contract involved in Belove was one for the lease of a particular building and imposed affirmative duties upon the ostensible lessee. In the instant case the contract was for the sale of the common commodity coal, and it imposed no duties on IPS except to accept and pay for the coal. The contract was completely lacking in what may be called the "personal element."
 
 
 28
 Apart from that, however, we think that the case to some extent was mischaracterized in the district court. This is not a suit brought by undisclosed principals suing in their own names upon a contract made in their behalf by an undisclosed agent having no beneficial interest in the contract and not a party to the suit. Nor is this a suit by a trustee of an express trust or by a party to a third party beneficiary contract who for some reason has unnecessarily joined the beneficiary or beneficiaries of the trust or contract.
 
 
 29
 This is an action brought by all four members of a joint venture on a contract for the purchase of coal made on behalf of the venture by one of its members in the member's own name. All of the plaintiffs are beneficially interested in the contract and all stand to suffer if the coal companies are able to take the dispute about price to arbitration and obtain a price increase. We think that all four plaintiffs are real parties in interest and have standing to maintain the suit. Since all of the members of the joint venture joined in the suit, it seems to us that the question of whether the courts of Iowa would have permitted the dismissed plaintiffs to sue alone on the contract is beside the point.[6]
 
 
 30
 The defendants can defend this case as well against the four plaintiffs as they can defend it against IPS alone. The only apparent reason that this jurisdictional controversy has arisen is because plaintiffs want the case heard in the state courts whereas defendants are insisting that it be heard in the federal court. If under our dual court system a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of properly joining a nondiverse defendant or a nondiverse co-plaintiff, he is free to do so.[7]
 
 
 31
 We hold that the three dismissed plaintiffs were real parties in interest, that there was no complete diversity of citizenship between the plaintiffs and the defendants, that the case should have been remanded, and that the January judgments of the district court were entered without jurisdiction.
 
 
 32
 The judgments appealed from are vacated, and the case is remanded to the district court with directions to send it back to the District Court of Woodbury County for further proceedings according to law.
 
 
 33
 Vacated and remanded with directions.
 
 
 
 [1]
 Iowa Southern is a Delaware corporation having its principal place of business in Iowa; IPL is an Iowa corporation; Iowa-Illinois is an Illinois corporation with its principal place of business in Iowa. The defendant Dana Coal Company is a Delaware corporation having its principal place of business in St. Louis, Missouri; Hanna Basin Coal Company is a Utah corporation having its principal place of business in Denver, Colorado. Medicine Bow Coal Company is a joint venture formed and owned by the other two defendants for the purpose of mining coal in Carbon County, Wyoming. It will be observed that there is no diversity of citizenship between Iowa Southern and Dana Coal Company. See 28 U.S.C. § 1332(c)
 
 
 [2]
 The interests in the case of Iowa-Southern, IPL, and Iowa-Illinois are precisely the same
 
 
 [3]
 Soon after notice of appeal was filed the defendants moved to dismiss the appeal contending that the January judgments of the district court were not appealable. An administrative panel of this court denied the motion without prejudice to renewal. It is not clear to us whether the defendants have abandoned their claim of unappealability. In any event, we have considered the matter and conclude that the judgments are appealable and that we have jurisdiction
 
 
 [4]
 We might note at this point that the problem presented in this case is somewhat different from that which is presented where a plaintiff undertakes to avoid federal jurisdiction by joining a "nondiverse" defendant. In that situation the citizenship of the nondiverse defendant may be ignored if he was "fraudulently joined." See Judge Sanborn's thorough discussion of fraudulent joinder in Morris v. E. I. Du Pont de Nemours & Co., 68 F.2d 788 (8th Cir. 1934)
 
 
 [5]
 Fed.R.Civ.P. 17(a) provides that all actions must be prosecuted in the name of the real party in interest and lists a number of types of representatives who are deemed to be real parties in interest and who may sue in their own right. That list includes trustees of express trusts and parties to contracts made for the benefit of third parties. The rule does not create or affect federal subject matter jurisdiction, but it does express the long held view that the existence of diversity of citizenship must be determined by reference to the citizenship of real parties in interest. 6 Wright & Miller, supra, § 1556 at 710-11
 
 
 [6]
 If this were in fact a true undisclosed principal case, i. e., if IPS had not been a member of the joint venture and had simply contracted as the undisclosed agent of Iowa Southern, IPL and Iowa-Illinois, and had they sued in Iowa on the contract, we are not at all sure that the Iowa courts would not have entertained the suit. Iowa follows the general rule that an undisclosed principal can sue in his own name on a contract made in his behalf. See Utilities Holding Corp. v. Chapman, 210 Iowa 994, 232 N.W. 116 (1930); Young v. Lohr, 118 Iowa 624, 92 N.W. 684 (1902). However, that general rule will not be applied in Iowa where the contract involves personal trust and confidence and where the person sought to be charged had no knowledge that the party with whom he dealt as principal was acting as agent for an undisclosed principal and where the contract is wholly executory. Shields v. Coyne, 148 Iowa 313, 127 N.W. 63 (1910). We do not know whether the Iowa Supreme Court would apply that exception or perhaps some other exception to the general rule to a contract like the one involved here which calls for the delivery of ordinary goods or commodities and where the relationship between the contracting parties is impersonal simply because the contract refers to the undisclosed agent as "buyer" or "seller"
 The problem of whether a complaint states a cause of action under state law frequently arises where a plaintiff has joined a nondiverse defendant, and where the diverse defendant removed the case to federal court on a claim of fraudulent joinder. In that situation it is well established that if it is clear under governing state law that the complaint does not state a cause of action against the nondiverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained. However, where the question of the sufficiency of the complaint against the nondiverse defendant is doubtful, it has been held that the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide. See, e. g., Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172 (5th Cir. 1968), and see the discussion appearing in Morris v. E. I. Du Pont de Nemours & Co., Inc., supra.
 
 
 [7]
 Results should not be different because of the choice of court. In this case very strong proof should be required to establish existence of a judicial controversy in light of the explicit contractual language calling for arbitration