The HANNA MINING COMPANY, a
Delaware Corporation, as
agent, Plaintiff,

v.

MINNESOTA POWER AND LIGHT
COMPANY, a Minnesota
Corporation, Defendant.

No. Civ. 5–82–307.

United States District Court,
D. Minnesota.

Oct. 24, 1983.

Robert H. Magie, III, Duluth, Minn., for plaintiff.

Samuel L. Hanson, Minneapolis, Minn., for defendant.

## ORDER

MILES W. LORD, Chief Judge.

Defendant Minnesota Power and Light Company moves to dismiss this breach of contract action for, *inter alia*, lack of subject matter jurisdiction. A magistrate acting pursuant to the special assignment provisions of 28 U.S.C. § 636(b)(1)(B) issued a memorandum recommending the motion be granted. This court, after an independent review of the files, records and proceedings, adopts the recommendation to dismiss for lack of subject matter jurisdiction but follows a different analysis than that of the magistrate.

Plaintiff Hanna Mining Company manages the Butler Taconite Project about 15 miles west of Hibbing on Minnesota's Mesabi Range. In 1974, Hanna Mining, acting as agent for Butler's owners, entered into an electric service agreement under which Minnesota Power would supply up to 44,700 kilowatts of electricity to the taconite project. Hanna Mining agreed to pay for at least 26,820 kilowatts monthly, or 60 per cent of its peak demand, whether or not it actually used that much power. This "minimum demand" provision has spawned the current controversy.

In 1981, Minnesota Power petitioned the Minnesota Public Utilities Commission (PUC) for a rate change. The PUC concluded that the minimum demand provision in the Butler contract was unreasonably preferential and, in a 1982 ruling, ordered it abrogated. In its place the PUC established what is, in effect, a 90 percent minimum demand payment. Most, if not all, of Minnesota Power's large customers other than Hanna Mining already had agreed by contract to such a provision.

Hanna Mining filed this suit after Minnesota Power insisted that the agreement, as amended by the PUC, continue in force. Hanna Mining seeks damages for amounts allegedly improperly billed and a declaration that the entire electric service agreement is a nullity, without force and effect. Jurisdiction of this court is invoked under the diversity of citizenship provisions of 28 U.S.C. § 1332.

Much of the confusion in this case stems from the complex corporate structure of the Butler Taconite Project, apparently the result of tax and pension planning. Indeed, the parties cannot even agree as to what type of entity is Butler Taconite. Hanna Mining contends it is merely a jointly-owned property. Minnesota Power calls it a joint venture or partnership. In any case, Butler Taconite is owned by Inland

Steel Mining Company and Itasca Pellet Company. Inland Steel Mining, in turn, is owned by Inland Steel Company. Itasca Pellet Company is owned by Hanna Itasca Company, a subsidiary of Hanna Mining, and Wheeling Itasca Company, a subsidiary of Wheeling-Pittsburgh Steel Corporation. Thus, Hanna Mining not only manages the project, it also has an ownership interest. (The attached chart, provided by defendants, illustrates the corporate hierarchy.)

The magistrate found that Hanna Mining, acting only as a managing agent in signing the contract, was not a real party in interest and therefore not entitled to bring this suit. The magistrate further concluded that Butler Taconite, the real party in interest, failed to meet diversity requirements. This court finds that Hanna *is* a real party in interest. However, it is the finding of this court that there is no subject matter jurisdiction because the other project owners are indispensable parties whose presence destroys diversity.

This court also finds that it is precluded from asserting jurisdiction by the Johnson Act, which prohibits federal court interference with state control over utility rates.

HANNA MINING IS A REAL PARTY IN INTEREST

■ Rule 17(a) of the Federal Rules of Civil Procedure sets forth the basic requirement for determining who may bring an action in federal court by stating that "[e]very action shall be prosecuted in the name of the real party in interest." The purpose of the rule is to insure that the party who brings an action possesses, under the substantive law, the right sought to be enforced. *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400 (8th Cir.1977); *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335 (Minn.1971). State law provides the substantive right in diversity cases. *Dubuque Stone Products Co. v. Fred L. Gray Co.*, 356 F.2d 718 (8th Cir.1966); *Dougherty v. Oberg*, 297 F.Supp. 635 (Minn.1969).

The magistrate considered and rejected three possible bases upon which Hanna

Mining might qualify as a real party in interest: a trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, and an agent with an ownership interest. This court agrees with the magistrate's recommendations as to the first two categories, but not as to the third.

■ The trustee of an express trust may sue in his own name under Rule 17(a). Hanna Mining did sign the power contract as an agent for Inland Steel and Itasca Pellet. But, unlike a trustee, a mere agent does not possess real party status. A trustee's powers are more expansive than an agent's and include the authority to hold, manage and dispose of assets for the benefit of others. *Navarro Savings Assn. v. Lee*, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980); *U.S. Epperson Underwriting Co. v. Jessup*, 22 F.R.D. 336 (Ga. 1958), *aff'd per curiam* 260 F.2d 355 (5th Cir.1958). In *Navarro*, the trustees were authorized to take legal title to and invest trust assets, and the trust beneficiaries could interfere in the affairs of the trust only in the most extraordinary situations. This made the trustees, when they brought suit, more than "mere conduits" for a remedy flowing to others. *Navarro*, 446 U.S. at 465, 100 S.Ct. at 1784. By contrast, Hanna Mining's powers as agent are more limited. Hanna Mining has not taken full legal title to the project. Its activities as manager are subject to the overall direction and approval of Inland Steel and Itasca Pellet. Hanna Mining also lacks the fiduciary status inherent in an express trust, as its management agreement with Inland Steel and Itasca Pellet specifically states that nothing in the pact shall be deemed to create any fiduciary relationship. The necessary attributes of a trust relationship are therefore lacking.

■ Likewise, Hanna Mining does not qualify as "a party with whom or in whose name a contract has been made for the benefit of another" under Rule 17(a). A senior vice president of Hanna Mining signed the power contract for "The Hanna

Mining Company, agent for Inland Steel Company and Itasca Pellet Company." Under general agency rules, an agent who makes a contract for a disclosed principal is not a party to the contract. Instead, the principal becomes the party. *Kost v. Peterson,* 292 Minn. 46, 193 N.W.2d 291 (1971); *Restatement (Second) of Agency* §§ 156 and 320 (1957). Hanna Mining argues that it is covered by Section 364 of the *Restatement,* which provides:

A person with whom an agent makes a contract on behalf of a principal is subject to liability in an action brought thereon by the agent in his own name on behalf of the principal *if the agent is a party promisee.* (Emphasis added).

However, Hanna Mining ignores comment b to this section, which states that whether or not an agent of a disclosed principal becomes a party to a contract is determined by reference to Section 320.

■ Hanna Mining is, however, a real party in interest because it is an agent with an ownership interest in the subject matter of the suit. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors Inc.,* 630 F.2d 250 (5th Cir.1980); *Corum v. United States,* 81 F.Supp. 728 (U.S.Ct.Cl.1949); 6 Wright & Miller, *Federal Practice and Procedure* § 1553, at 698. Hanna Mining owns 37.5 per cent of Butler Taconite through its wholly-owned subsidiary Hanna Itasca. Thus, when Hanna Mining acts as an agent, it is acting not only for Inland Steel and Itasca Pellet but also on its own behalf.

Minnesota Power argues, and the magistrate found, that Hanna Mining's ownership interest is merely that of a shareholder and that this is not sufficient to meet the real party in interest test. The cases cited by the magistrate and Minnesota Power, *Singer v. Allied Factors, Inc.,* 216 Minn. 443, 13 N.W.2d 378 (1944) and *Charles Keeshin, Inc. v. Farmers & Merch. Bank of Rogers,* 199 F.Supp. 478 (D.Ark.1961), are inapposite. Neither case deals with a shareholder who also is an agent. The matter before this court is not a situation where a small shareholder with no management interest is trying to usurp the corporation's cause of action. Instead, Hanna Mining is a managing agent with a substantial ownership share. Hanna Mining played an active role in negotiating the power contract, and assumed primary responsibility for monitoring and enforcing Minnesota Power's performance under the agreement. This powerful combination of management and ownership roles makes it clear that Hanna Mining's interest is substantially identical with that of Butler Taconite. *See Reserve Mining Co. v. Environmental Protection Agency,* 514 F.2d 492, 534 (8th Cir.1975). This is more than adequate to give Hanna Mining substantive rights in this action and the status of a real party in interest.

## JOINDER DEFEATS COMPLETE DIVERSITY

■ Hanna Mining seeks to base the jurisdiction of this court on 28 U.S.C. § 1332(a)(1), which provides for federal jurisdiction over controversies between "citizens of different States." Federal courts are cautious in their exercise of diversity jurisdiction because of the risks to federalism involved when a federal court decides issues of state law. *Dougherty v. Oberg,* 297 F.Supp. 635, 636–37 (D.Minn.1969). This court must find complete diversity before it exercises jurisdiction in this case. *Strawbridge v. Curtiss,* 7 U.S. 267, 2 L.Ed. 435 (1806). That is, each plaintiff must be from a state that is different from the defendant. *Id.*

Defendant Minnesota Power is a Minnesota corporation with its principal place of business in Minnesota, and is without doubt a citizen of Minnesota for diversity purposes. Plaintiff Hanna Mining is either an Ohio or Delaware corporation engaged in worldwide operations.

The inquiry into diversity status does not stop with these two corporations, however. Hanna Mining may be a real party in interest under Rule 17(a). But Rule 19 still must be consulted to determine if there are other parties—Hanna Mining's principals Inland and Itasca Pellet—who must be joined in this action. *Morelli v. Northwest*

*Engineering Corp.,* 30 F.R.D. 522 (D.Wis. 1962); 6 Wright & Miller, *Federal Practice and Procedure* § 1543, at 645–46. If so, the citizenship of these parties must be considered.

Rules 19(a) and (b) of the Federal Rules of Civil Procedure provide guidelines for determining who should be joined in an action to insure just adjudication. The analysis includes an inquiry into whether: complete relief can be granted without the absentee, there is an adequate remedy if the action is dismissed for nonjoinder, the absentee's interest in the subject matter of the action is similar to that of a party's. The factors set out in Rule 19 are not intended to be exclusive, as pragmatic considerations control. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Hanna Mining points out that complete relief can be accorded without the joinder of its principals, and that Minnesota Power does not run a risk of duplicative litigation since Inland and Itasca Pellet ratified Hanna Mining's bringing this action on their behalf. Though these arguments may be valid, they are far outweighed by other considerations.

■ As previously stated, Hanna Mining is a real party in interest because it is an agent with an ownership interest in the subject matter of the suit. This ownership interest is in the company's subsidiary, Hanna Itasca. In turn, Hanna Itasca's interest in the taconite project is through its ownership in the Itasca Pellet partnership. In sum, the crucial ownership interest of Hanna Mining is in a partnership. Generally all partners must join in asserting a partnership claim under a contract if the suit is not in the name of the partnership. *Grant County Deposit Bank v. McCampbell,* 194 F.2d 469 (6th Cir.1952); *Smith v. Smith, Barney, Harris, Upham & Co.,* 505 F.Supp. 1380 (D.Mo.1981); *Karp v. Coolview of Wisconsin, Inc.,* 25 Wis.2d 299, 130 N.W.2d 790 (1964); 7 Wright & Miller, *Federal Practice and Procedure* § 1613, at 131. If Hanna Mining uses its ownership

in a partnership as the basis of its real party status, it must also follow the well-accepted rules governing the joinder of partners. Itasca Pellet, Hanna Itasca and Wheeling Itasca thus become indispensable parties.

■ Even without considering the partnership issue, other grounds mandate the joinder of Itasca Pellet—and Inland. Hanna Mining, through its ownership and management roles, and its principals Inland and Itasca Pellet have substantially identical interest in Butler Taconite. This was found to be sufficient to compel joinder in *Reserve Mining,* 514 F.2d at 534. Furthermore, in another eighth circuit decision with facts similar to the present case, the court held that all four members of a joint utility venture were real parties in interest with standing to maintain a suit on a coal contract, which was made on behalf of the venture by one of its members. *Iowa Public Service Co. v. Medicine Bow Co.,* 556 F.2d 400, 405 (8th Cir.1977).

■ Two more considerations support the conclusion that Inland and Itasca Pellet are indispensable parties. First, joint obligees on a contract are generally held to be indispensable parties. *Harrell & Sumner Contracting Co. v. Peabody Petersen Co.,* 546 F.2d 1227 (5th Cir.1977); *Fremon v. W.A. Sheaffer Pen Co.,* 209 F.2d 627, 633–34 (8th Cir.1954). Second, plaintiffs would not be without a forum if they cannot bring suit in federal court; state courts are available. *Travelers Indemnity Co. v. Westinghouse Electric Corp.,* 429 F.2d 77, 79 (5th Cir.1970); *Barnett v. Borg-Warner Acceptance Corp.,* 488 F.Supp. 786 (D.Ark. 1980).

The Itasca Pellet partnership and Inland Steel having been found indispensable parties, the next step is to determine their citizenship for diversity purposes. As will be seen below, the citizenship of either one is enough to destroy diversity.

■ Inland Steel Mining, which owns 38 per cent of Butler Taconite, was incorporated in Delaware. But for the purposes of diversity jurisdiction, a corpora-

tion is deemed to be a citizen not only in its state of incorporation but also in the state where it has its principal place of business. 28 U.S.C. § 1332(c). The purpose of this dual citizenship for corporations is to deny federal court access to essentially local corporations which were incorporated in outside states. *Riley v. Gulf, Mobile & Ohio Railroad Co.*, 173 F.Supp. 416 (Ill.1959). Inland Steel Mining was created to hold and operate Inland Steel Company's interest in Butler Taconite, and it has no business other than this venture. Therefore, Inland Steel Mining's principal place of business is clearly in Minnesota, not in the state in which its executive and administrative offices may be located, and the corporation is a citizen of Minnesota for diversity purposes. *Bialac v. Harsh Building Co.*, 463 F.2d 1185 (9th Cir.1972); *Mattson v. Cuyuna Ore Co.*, 180 F.Supp. 743 (Minn. 1960). Since Minnesota Power is also a Minnesota corporation, there is no complete diversity and federal jurisdiction is destroyed. *City of Indianapolis v. Chase National Bank, Trustee*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); *Iowa Public Service*, 556 F.2d at 403–04.

■ Complete diversity also is destroyed by the presence of Itasca Pellet. Itasca Pellet is a Delaware partnership owning 62 per cent of Butler Taconite. The citizenship of an unincorporated association is determined on the basis of the citizenship of all of its members. *Steelworkers v. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). The members of the Itasca Pellet partnership are Hanna Itasca and Wheeling Itasca. Both were incorporated in Delaware, but are Minnesota corporations because their principal places of business are in Minnesota.

This court realizes the diversity discussion is somewhat complex. But this is so only because Butler Taconite is structured in such a complicated manner. (This Court has chosen to leave unanswered the question of Butler Taconite's organizational status since diversity is defeated without further unraveling the corporate structure.) The plaintiffs chose such a corporate scheme, and they must live with the consequences.

## THE JOHNSON ACT FORECLOSES FEDERAL JURISDICTION

The Johnson Act of 1934 seeks to foreclose federal court interference with state control over intrastate utility rates. The act provides:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
>
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
>
> (2) The order does not interfere with interstate commerce; and
>
> (3) The order has been made after reasonable notice and hearing; and,
>
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.

The act was passed after years of hostility generated by federal encroachment upon the traditional rate-making powers of the states. Strong policy reasons, then, dictate a broad reading of the act to keep federal interference to a minimum. *Tennyson v. Gas Service Co.*, 506 F.2d 1135 (10th Cir. 1974).

State policy concerns are of utmost importance in the present case. Power contracts for large customers like Butler Taconite have been a central focus of concern since Minnesota Power first came under state regulation. Minnesota Power constructed substantial capacity for serving large taconite companies in the mid 1970s. The PUC later determined that the decline in taconite operations would produce a serious under-utilization of capacity and shortfall in revenues for Minnesota Power, and that additional revenue obligations for large power customers were necessary to protect other customers. The public interest of Minnesota citizens, and not just the private concerns of the parties to the Han-

na Mining-Minnesota Power contract, lie behind the 1982 PUC order.

Hanna Mining argues that the Johnson Act is inapplicable because it is not challenging the finality of the PUC order and is not attacking its enforcement. In essence, however, that is exactly what Hanna Mining is trying with an end run around the agency. Federal courts may not impinge upon a rate order by taking any action that would affect it, even indirectly. *Tennyson,* 506 F.2d at 1139; *Mountain Fuel Supply Co. v. Shell Oil Co.,* 533 F.Supp. 40, 44 (D.C.Utah 1981). Any ruling that Hanna Mining may nullify the contract in the wake of the PUC order would obviously undercut the agency's authority. Such an action would, in the words of the Johnson Act, "restrain the operation of, or compliance with, any order affecting rates."

There is no doubt that the PUC order was a rate action for the purposes of the Johnson Act. The Minnesota Public Utilities Act defines "rates" as follows:

> Every compensation, charge, fare, toll, tariff, rental and classification, or any of them, demanded, observed, charged, or collected by any public utility for any service and any rates, regulations, practices, or *contracts affecting any such compensation, charge, fare, toll, rental, tariff, or classification.*

Minn.Stat. § 216B.02, subd. 5 (emphasis added). The minimum demand provision at issue in the Hanna Mining contract, with its enormous impact on Minnesota Power's compensation, is covered by this definition.

Two Eighth Circuit opinions cited by Hanna Mining do not, upon a closer reading, support its argument that the Johnson Act is inapplicable since neither case dealt with an order affecting rates. In *Cody v. Union Electric Co.,* 545 F.2d 610 (8th Cir. 1976), the issue before the court was an attack on a credit policy which allegedly unlawfully discriminated on a racial basis. In *Minnesota Gas Co. v. Public Service Commission,* 523 F.2d 581 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 320 (1967) the issue was a constitutional challenge to the state's power to regulate *per se* rather than to specifics of an administrative order.

The remaining requirements of the Johnson Act are satisfied. Jurisdiction of this case is based solely on diversity of citizenship. The PUC order does not interfere with interstate commerce, and it was made after reasonable notice and hearing. Finally, if Hanna Mining does want to assert a contract claim, the state courts afford a plain, speedy and efficient remedy.

In summary, this court lacks jurisdiction for two independent reasons: lack of complete diversity and preclusion under the Johnson Act. Therefore, IT IS HEREBY ORDERED That defendant's motion for dismissal be granted.